[Civil No. 862.   Filed March 30, 1905.]

[80 Pac. 392.]

HARRY J. BENNETT, Plaintiff and Appellant, v. W. F. NICHOLS et al., Defendants and Appellees.

1. TAXES AND TAXATION — EXEMPTION — TERRITORIAL LEGISLATURE — POWER TO GRANT—REV. STATS. U. S. 1878, SEC. 1851, AND LAWS ARIZ. 1891, ACT No. 41, CITED AND CONSTRUED.—It being provided by section 1851, *supra,* that the legislative power of the territory shall extend over all rightful subjects of legislation not inconsistent with the constitution and laws of the United States, act No. 41, *supra,* exempting a railroad constructed pursuant to the act from taxation for twenty years is not invalid as an excess of legislative power.

2. SAME—SAME—LOCAL OR SPECIAL LAWS—ACT CONGRESS JULY 30, 1886, (HARRISON ACT,) AND LAWS ARIZ. 1891, ACT No. 41, CONSTRUED.—Act No. 41, *supra,* exempting railroads constructed pursuant to the act from taxation for twenty years, is not in conflict with the act of Congress, *supra,* which provides ''that the legislatures of the territories, now or hereafter to be organized, shall not pass local or special laws in any of the following enumerated cases; that is to say, . . . granting to any corporation, association, or individual any special or exclusive privilege, immunity, or franchise whatever.''

3. SAME—SAME—REPEAL—LAWS ARIZ. 1891, ACT No. 41, REV. STATS. ARIZ. 1901, PARS. 3834, 4235, CONSTRUED.—Act No. 41, *supra,* exempts certain roads from taxation for twenty years. Paragraph 3834, *supra,* provides that all property of every kind and nature within the territory shall be subject to taxation. Paragraph 4235, *supra,* expressly provides that all acts of the legislative assembly ''are hereby repealed, except the following: . . . Act No. 41.'' *Held,* that paragraph 3834, *supra,* did not repeal act No. 41.

4. SAME—SAME—CONTRACT—CANNOT BE IMPAIRED.—When the conditions and considerations upon which a grant of exemption was based have once been met, a contract right exists, which cannot be impaired by a subsequent statute of modification or repeal.

APPEAL from a judgment of the District Court of the Third Judicial District in and for the County of Maricopa. Edward Kent, Judge. Affirmed.

The facts are stated in the opinion.

Bissell Thomas, for Appellant.

The only grant of powers under which the authority to adopt a tax-exemption act could be implied is the grant contained in section 1851 of the Organic Act delegating to the legislative assembly the power to legislate on all rightful subjects of legislation not inconsistent with the constitution and laws of the United States.

It is a well-known principle of law that the delegated power to tax does not imply the delegated power to exempt from taxation. The legislative assembly is a body possessing no inherent powers, and which is therefore limited to the exercise of those which have been delegated to it.

The supreme court of the United States, in the case of *Banks* v. *Yankton County,* 101 U. S. 133, 25 L. Ed. 1046, has held that the relation of the territory to the federal govern-

ment is the same which counties bear to their respective states.

Counties in the absence of specific permission have not the power to grant exemptions from taxation. *Whitney* v. *West Point,* 88 Va. 905, 29 Am. St. Rep. 750, 14 S. E: 698, 15 L. R. A. 860; *Railway Co.* v. *Wilson County,* 89 Tenn. 597, 15 S. W. 446; *Weeks* v. *Milwaukee,* 10 Wis. 242; *Brewer Brick Co.* v. *Brewer,* 62 Me. 62, 16 Am. Rep. 395.

This has been held where a contract has been entered into where the corresponding benefits have been given in return for the exemption. *Austin* v. *Gas. Co.,* 69 Tex. 180, 7 S. W. 200; *New Orleans* v. *Waterworks,* 36 La. Ann. 432; *State* v. *Hannibal,* 75 Mo. 208.

The adoption of the Exemption Act of 1891 is prohibited by section 5 of chapter 818 of the Revised Statutes of the United States. The language of that section (section 61 of the Organic Act) is as follows: ''The legislative assemblies of the several territories shall not grant private charters or special privileges,'' etc. This is a clear inhibition against the granting of any special privileges, and that an exemption from taxation is a special privilege is too plain for argument. The supreme court of Oklahoma, in *Daily Leader* v. *Cameron,* 3 Okla. 677, 41 Pac. 635, quoting Black's Law Dictionary, held that ''A special privilege, in constitutional law, is a right, power, franchise, immunity, or privilege granted to or vested in a person or class of persons to the exclusion of others and in derogation of common right.'' Is not an exemption from taxation a special privilege within the meaning of this definition?

The adoption of the Exemption Act of 1891 is prohibited by the Harrison Act. *State* v. *Herrman,* 75 Mo. 340; *Morrison* v. *Bachert,* 112 Pa. St. 322, 5 Atl. 739; *State* v. *Hammer,* 42 N. J. L. 435; *Anderson* v. *Trenton,* 42 N. J. L. 486; *Pavonia Ry.* v. *Jersey City,* 45 N. J. L. 297; *People* v. *Cooper,* 83 Ill. 585; *Devine* v. *Commissioners,* 84 Ill. 590; *Mitchell* v. *McCorkle,* 69 Ind. 184.

The Exemption Act of 1891 was repealed by the adoption of section 3834 of the Revised Statutes of Arizona of 1901. *Welch* v. *Cook,* 97 U. S. 541, 24 L. Ed. 1112; *Louisville Water Co.* v. *Clark,* 143 U. S. 1, 36 L. Ed. 55, 12 Sup. Ct. 346; *Gulf etc. Ry.* v. *Hewes,* 183 U. S. 66, 46 L. Ed. 86, 22 Sup. Ct. 26.

E. W. Wells, Attorney-General, and T. J. Norton, for Appellees.

DAVIS, J.—On March 16, 1891, the sixteenth legislative assembly of the territory of Arizona enacted a law as follows:—

"No. 41.

"An act to encourage the construction of railroads within the territory of Arizona.

"Be it enacted by the legislative assembly of the territory of Arizona:

"Section 1. That, for the purpose of encouraging the building and construction of railroads within the territory of Arizona, by any person or persons, association or corporation, all railroads built without subsidies, and in accordance with the provisions of this act, shall be exempt from taxation for the period of twenty years, from the passage of this act. And any person, or persons, association or corporation, wishing to avail themselves of the provisions of this act, shall file their intentions with the secretary of the territory, within six (6) months after the passage of this act, setting forth the initial and terminal points of the proposed railroad and probable length of the same, and the actual construction of said proposed railroad shall be commenced within six (6) months from the filing of such notice of intention, and no railroad or part thereof shall be exempt from taxation as provided by this act, unless the entire road shall be built, equipped and in running order from the initial and terminal points, as filed with the secretary of the territory, as provided by this act.

"Sec. 2. As soon as any road is built, and before it is open to the public for carrying of freight or passengers, the constructors or owners of said road shall notify the supervisors of the county or counties through which such road is built, that such road is completed and ready for business; and it shall be the duty of such supervisors to appoint a competent engineer or engineers, who shall inspect such road within such county and, if upon his or their report the road is declared to be completed the board of supervisors may declare the road open to the public, and the franchise, right of way, roadbed, bridges, culverts, rolling stock, station grounds, depots, water tanks, coal bins, turntables, round houses, machine shops, sec-

tion houses, telegraph lines and personal property used in the operation of such railway shall be exempt from taxation for twenty years after the passage of this act.

"Sec. 3. This act shall not apply to any road that is not a public carrier and not built for public use, nor to any road not supplied with first-class accommodation to the traveling public, and to no road not built at the rate of fifty (50) miles per annum, or work done in the construction of said commencement until completed, provided, that any road built under the provisions of this act, shall run one train per day each way along said line for the accommodation of passengers and freight from and between the terminal points; and provided, further, that the benefits of this act shall not apply to the shifting or change of road-bed of any road now built, equipped and in running order within the territory of Arizona.

"Sec. 4. All acts or parts of acts in conflict with the provisions of this act are hereby repealed.

"Sec. 5. This act shall take effect and be in force from and after its passage.

"Approved March 16, 1891."

Laws 1891, pp. 61, 62.

Thereafter, on May 27th of the same year, the Santa Fe, Prescott, and Phœnix Railway Company was organized under the incorporation laws of the territory of Arizona for the purpose of constructing, maintaining, and operating, as a public carrier, a line of railroad from Ash Fork, in Yavapai County, to Phœnix, in Maricopa County. The said railway company properly filed its notice of intention to avail itself of the provisions and benefits of said Exemption Act, complying therein with all the requirements thereof. The company thereafter constructed and completed said line of railroad, in all things according to the requirements of said act, and said railroad was accepted by the boards of supervisors of said counties and declared open to the public. The railroad has ever since been maintained and operated by said company in strict compliance with the requirements and conditions of said act, and the company claims that, by virtue of its compliance with the provisions of said act, its said railroad, with the appurtenances and all the property used in connection

therewith, has been ever since the completion of said road, and is now, exempt from taxation. The appellant, Harry J. Bennett, as a property-owner and taxpayer of Maricopa County, in said territory, commenced a proceeding in *mandamus* in the district court of that county to compel the board of equalization of said territory to assess for taxation said railroad, and all property used in connection therewith, and to transmit to the local authorities proper returns of such assessment, in accordance with the requirements of the general law, notwithstanding said Exemption Act, and the compliance by said railway company with all the conditions and provisions thereof. The facts of the case were stipulated, and upon the submission of the cause the petition for the writ was denied by the court below. From the judgment denying said writ, this appeal is now prosecuted.

The case presents the question of the validity of said Exemption Act, and, if originally valid, a further question as to whether the act was repealed by the Revised Statutes of 1901.

It is the first contention of counsel for the appellant that the legislative assembly of Arizona never possessed the power to grant exemptions from taxation; that, because there is no express or specific mention of this power in the enactments of Congress respecting the territory, the power has never been conferred. The legislative powers of the territory were derived through grant made in the Organic Act, expressed in the following words: ''The legislative power of this territory extends to all rightful subjects of legislation not inconsistent with the constitution of the United States. But no laws shall be passed interfering with the primary disposal of the soil. No tax shall be imposed upon the property of the United States, nor shall the lands or other property of non-residents be taxed higher than the lands or property of residents.'' Rev. Stats. U. S. 1878, sec. 1851.

The grants of legislative power in all acts organizing territories since the organization of the territory of Wisconsin, in 1836, were expressed in similar language. *Maynard* v. *Hill,* 125 U. S. 190, 8 Sup. Ct. 723, 31 L. Ed. 654. The questions arising under these acts, as to what are ''rightful subjects of legislation,'' and as to what are the scope and character of the legislative powers conveyed, have been frequently be-

fore the courts for adjudication. It has been held that, aside from the limitations and restrictions expressly made in these grants, the legislative powers thereby conferred on territorial governments are as broad as the powers theretofore usually exercised by the legislatures of the states. In *Cope* v. *Cope,* 137 U. S. 682, 11 Sup. Ct. 222, 34 L. Ed. 832, Mr. Justice Brown, in speaking with reference to the scope of the legislative powers of the territory of Utah, said: "With the exceptions noted in this section, the power of the territorial legislature was apparently as plenary as that of the legislature of a state." The exceptions referred to were the provisos that no law should be passed interfering with the primary disposal of the soil, that no tax should be imposed upon the property of the United States, and that non-residents should not be discriminated against in the exercise of the taxing power. In *Simms* v. *Simms,* 175 U. S. 162, 20 Sup. Ct. 58, 44 L. Ed. 115, with reference to the dominion and sovereignty of Congress over the territory, and the extent of the legislative powers granted to territorial governments, it was said: "In the exercise of this power, Congress has enacted that (with certain restrictions not affecting this case) 'the legislative power of every territory shall extend to all rightful subjects of legislation, not inconsistent with the constitution and laws of the United States.' The power so conferred upon a territorial assembly covers the domestic relations, the settlement of estates, and all other matters which within the limits of the state are regulated by the laws of the state only." In *Maynard* v. *Hill, supra,* where was involved the question of the power of a territorial legislature to grant a divorce, the scope of the legislative powers of the territory was described as follows: "What were 'rightful subjects of legislation' when these acts organizing the territories were passed, is not to be settled by reference to the distinctions usually made between legislative acts and such as are judicial or administrative in their character, but by examination of the subjects upon which legislatures have been in the practice of acting with the consent and approval of the people they represented. A long acquiesence in repeated acts of legislation on particular matters is evidence that those matters have been generally considered by the people as properly within legislative control." In *Peacock & Co.* v. *Pratt,*

121 Fed. 772, 58 C. C. A. 48, in the circuit court of appeals for the ninth circuit, there was involved a question as to the power of the lawmaking body of the territory of Hawaii to create exemptions from taxation. The grant of legislative power to the territory of Hawaii was expressed in the same terms employed in the Organic Act of Arizona. In construing this grant, the court said: "The section so quoted is identical with that which has usually been inserted in the organic acts creating territorial governments. It provides, in effect, that the territorial legislature may not invade the domain of Congress as to the subjects of legislation; but, aside from that, it concedes to it all the powers of a legislature of the states." In absence of constitutional restrictions, or, if such restrictions exist, within the limits laid down by the fundamental law, the legislature has plenary power to create whatever exemptions it may deem expedient. This doctrine is too well established by authority to admit of discussion or to be called in question. 12 Am. & Eng. Ency. of Law, 2d ed., p. 272, and cases there cited. Again, it has been held that, aside from express limitations and restrictions which Congress has prescribed, the power of territorial governments in the matter of taxation is absolute. In *Talbott v. Silver Bow County*, 139 U. S. 438, 11 Sup. Ct. 594, 35 L. Ed. 210, where it was claimed that the legislature of the territory of Montana, in the selection of the subjects of taxation, had been guilty of unjust and unlawful discrimination, as to the power of the territory over the subjects of taxation, the court said: "Under the general territorial system, as expressed in the various organic acts, the power of taxation is absolute, save as restricted by the constitution or congressional enactments." In *Peacock & Co. v. Pratt, supra*, it was said: "The provision that the legislative power shall extend to 'all rightful subjects of legislation' includes, therefore, full and comprehensive power to legislate in the matter of taxation." Furthermore, it has been several times expressly held that territorial governments possess the power to grant exemptions from taxation. The supreme court of Minnesota sustained such a grant made by the territorial government, saying: "The charter granted in May, 1857, constituted a contract between the territory and the Minnesota and Pacific Railroad Company, one of the terms of which was that the lands granted in aid of the road should

be exempt from taxation until sold and conveyed by the company. That the exemption thus conferred is a contract right —a right which a legislature, in the absence of constitutional inhibition, is competent to grant, and inviolable—has been settled in a series of decisions by the supreme court of the United States, so that the matter is not open to discussion. [Citing *State of New Jersey* v. *Wilson,* 7 Cranch, 164, 3 L. Ed. 303; *Gordon* v. *Appeal Tax Court,* 3 How. 133, 11 L. Ed. 529; *Jefferson Branch Bank* v. *Skelley,* 1 Black, 436, 17 L. Ed. 173.] The defendants further contend that, even if a state legislature could grant an exemption of this nature from taxation, a territorial government is a mere creature of Congress, created for temporary purposes only, and that therefore it has not the power to grant an exemption of this kind. We think there is nothing in this point. By section 6 of the [Minnesota] Organic Act it is declared 'that the legislative power of the territory shall extend to all rightful subjects of legislation consistent with the constitution of the United States and the provisions of this act.' The power thus conferred would appear to be ample to sustain the grant of exemption from taxation in this case, and we can perceive no reason why such grant may not be a subject of legislation as rightfully under a territorial as under a state government. Another point presented by the defendants is that, even if the territorial legislature could bind the territory, it had not power to alienate or abridge the sovereign authority of the future state. The doctrine laid down in *Dartmouth College* v.*Woodward,* 4 Wheat. 651, 4 L. Ed. 629, would be sufficient answer to this position. . . . The defendants take the position that the territorial legislature was, in effect, prohibited from making grants of exemption from taxation by section 6 of the Organic Act, which contains this provision: 'Nor shall the lands or other property of non-residents be taxed higher than the lands or other property of residents.' It is claimed that the Minnesota and Pacific Railroad Company was a resident of the place of its creation, but this is by fiction or construction of law. The provision of the Organic Act, as well as a similar provision found in the act of Congress authorizing the people of Minnesota to form a state government, was designed to forbid unjust discrimination in favor of residents in fact, and against non-residents in fact, and has no appli-

cation to a case of this kind." *First Division* v. *Parcher,* 14
Minn. 297 (Gil. 224). The supreme court of Dakota, dealing
with the question whether the territory of Minnesota had
power under its Organic Act to exempt lands of a railroad
company from taxation until they should be sold and con-
veyed by the company, said: "As to the power of the terri-
tory of Minnesota to grant such privileges, and to bind itself
and its successors by its contract to that effect, the question is
not new. The following cases are directly in point in favor of
the existence of such power. [Citing *St. Paul etc. R. R. Co.* v.
*Parcher,* 14 Minn. 297 (Gil. 224) ; *State* v. *W. and St. Paul R.
Co.,* 21 Minn, 315; *State* v. *Trustees, etc.,* 21 Minn.] These
are adjudications under the very acts of the legislature of
the territory and state of Minnesota here to be considered. On
principle it is difficult to see how any other conclusion could
be arrived at. The United States had the sole power of leg-
islating over or for the territory of Minnesota, and it could
and did delegate that power to the territorial legislature."
*Railroad Co.* v. *County of Deuel,* 3 Dak. 1, 12 N. W. 561.
The supreme court of Washington sustained an exemption
from taxation granted by its territorial government. *Rail-
road Co.* v. *Chilberg,* 6 Wash. 612, 34 Pac. 163. And in *Pryor*
v. *Bryan,* 11 Okla. 357, 66 Pac. 348, it was held that the taxing
power of a territory includes the power to create exemptions.
Thus it will be seen that there is included among "the sub-
jects upon which legislatures have been in the practice of act-
ing with the consent and approval of the peoples they repre-
sented," the subject of the creation of exemptions from
taxation. Laws granting exemptions from taxation, except
where in conflict with constitutional limitations  and restric-
tions, have ever been recognized as valid exercises of legisla-
tive power, and as dealing with a "rightful subject of legis-
lation."

It is also urged on behalf of the appellant that the terri-
torial Exemption Act is in conflict with the act of Congress
approved July 30, 1886, commonly known as the "Harrison
Act," which provides "that the legislatures of the territories
of the United States, now or hereafter to be organized, shall
not pass local or special laws in any of the following enumer-
ated cases, that is to say . . . granting to any corporation,
association, or individual any special or exclusive privilege,

immunity or franchise, whatever.'' 24 Stats. 170, c. 818. Counsel for the appellant has not favored us with a presentation of his views as to why this law is a special law, and we are not aided materially by the cases which have been cited to support that contention. The Exemption Act fulfills in every particular the legal definition of a general law. The obvious policy and object of the law was to promote the rapid development of the territory, by inducing the immediate construction of new and additional lines of railroad within its boundaries. All of the authorities agree that it is permissible to classify, for purposes of legislation, with reference to the policy and object of the proposed law. The classification adopted in this law, and all of the limitations and restrictions contained in the act, were made in the interest of the public, and directly tend to the advancement of the policy of the law. The act in question does not attempt any classification of persons or owners. Its offer and pledge were extended to all, without any discrimination on account of residence, ownership, or other basis. Every new line of railroad constructed in compliance with its requirements, no matter by whom constructed, was to be relieved from taxation for the limited time. The law made no classification, except as it confined its offer of immunity from taxation to lines of road thereafter to be constructed. This classification or restriction was reasonable, just, and lawful. It is doubtful whether an attempt to extend the grant of exemption to roads existing at the time of the passage of the act, without the requirement of some new promise, undertaking, or service in favor of the public by these existing roads, would have been a valid exercise of legislative power. It certainly would not have been in harmony with the policy and the object of the legislation. The element of consideration or benefit accruing to the public, and generally said to be essential to support a grant of exemption from taxation, would have been entirely wanting. The principles governing the question whether or not a particular law is general or special have been expressed as follows: ''A law, to be general, need not operate alike upon all the inhabitants of the state, or all the cities or all the villages in a state. To require that would be utterly impracticable. A law is general which operates alike upon all the inhabitants or all the cities or all the villages or other subjects of a class

subject to the legislation. That, for the purpose of legisla-
tion, it may be necessary to make, and that the legislature
may make, such classification, is undoubted. The only prac-
tical limitation to this power is that the classification shall be
based upon some natural reason—some reason suggested by
necessity; by some ·difference in the situation and circum-
stances of the subjects classified, suggesting the necessity of
different legislation with respect to them—and shall not be
merely arbitrary, with no apparent reason, except a desire
to evade, under the forms of a general law, the constitutional
inhibition of special legislation." *State* v. *Spaude,* 37 Minn.
322, 34 N. W. 164. In New Jersey it has been held that a
statute providing that no lease of oyster-beds lying under
certain tidal waters within the state should be made to any
person not a citizen and resident of the state, unless he was
using such beds at the time of the passage of the act, or to
any citizens and residents of the state unless they had been
such for twelve months, did not contravene the provisions of
the constitution declaring against special legislation; the
court saying that the constitutional provision was intended to
prevent the selection of individuals or corporations as the
objects of the state's bounty, to the exclusion of other citizens
of the state. Continuing, the court said: "Nor is there any
selection by the act of favored individuals as the recipients
of the state's liberality, to the exclusion of other citizens.
Every citizen is eligible to take a lease of these lands for the
purposes to which they are appropriated by the act, when he
has been such for a period of twelve months next before the
lease is made, and has also been a resident of the state during
that time; and no citizen can enjoy this privilege until his
citizenship and residence have continued for the period men-
tioned." *State* v. *Corson,* 67 N. J. L. 178, 50 Atl. 780. In
*Fortain* v. *Smith,* 114 Cal. 494, 46 Pac. 381, it was held that
section 2853 of the Political Code of California, providing that
"No toll-bridge or ferry must be established within one mile
immediately above or below a regularly established ferry or
toll-bridge, unless the situation of a town or village, the cross-
ing of a public highway, or the intersection of some creek or
ravine renders it necessary for public convenience," was not in
conflict with the provision of the constitution prohibiting the
granting of special privileges or immunities, or the provision

prohibiting special laws granting any special or exclusive right, privilege, or immunity, or with the provision prohibiting special laws chartering or licensing ferries, bridges, or roads. The court, in part, said: ''The statute in question grants no privileges or immunities which 'upon the same terms shall not be granted to all citizens'; nor is it in any sense a special law, but is general, and operates alike upon all standing in the same relation thereto. Nor are the privileges it authorizes in any way obnoxious to the spirit or intent of the constitution or laws, or open to the objection of authorizing monopolies. . . . The theory upon which such rights are granted is to promote the public good and convenience, the advancement of commerce, and the more ready intercourse of the people; and a reasonable protection of those who hazard their private means in thus ministering to the public need is in the interest and direction of good government, by encouraging enterprise.'' The provisions of the Exemption Act clearly show that the motive for the legislation was a concern for the prosperity of the territory, and not a desire to favor special interests. The act provided for the granting of an ''immunity,'' but not a ''special'' or ''exclusive'' immunity, since the offer was made to every person, association, or corporation which would comply with the conditions of the law. What has been here said has application, with equal force, to the claim made by the appellant that the law in question is in conflict with section 5 of the Harrison Act.

This brings us to the final question, as to whether the Exemption Act has been repealed. In support of the affirmative of this proposition, the appellant relies on paragraph 3834 of the Revised Statutes of 1901, which requires that ''all property of every kind and nature, whatsoever, within the territory, shall be subject to taxation,'' with certain exceptions immaterial to the question before us. The paragraph referred to is a re-enactment of paragraph 2630, contained in the Revised Stautes of 1887. The Exemption Act had force and vitality alongside of this statute down to the adoption of the Revised Statutes of 1901. We think that the question of whether or not it was then repealed is sufficiently answered in the negative by the express declaration of the legislature itself, contained in paragraph 4235 of said Revised Statutes of 1901, which reads:—

"All acts of the fifteenth, sixteenth, seventeenth, eighteenth, nineteenth and twentieth legislative assemblies of the territory of Arizona, are hereby repealed, except the following: . . . Act. No. 41. An act to encourage the construction of railroads within the territory of Arizona, approved March 16, 1891."

But aside from this, the principle is abundantly established that, when the conditions and considerations upon which a grant of exemption was based have once been met, a contract right exists, which cannot be impaired by a subsequent statute of modification or repeal. 12 Am. & Eng. Ency. of Law, 2d ed., p. 385, and cases cited; *McGehee* v. *Mathis*, 4 Wall. 143, 18 L. Ed. 314; *Commonwealth* v. *Railroad Co.*, 95 Ky. 60, 23 S. W. 868; *Commonwealth* v. *Railroad Co.*, (Ky.) 31 S. W. 464; *Scotland Co.* v. *Railway Co.*, 65 Mo. 123.

The judgment of the district court will be affirmed.

SLOAN, J., and DOAN, J., concur.