[Civil No. 933.  Filed November 13, 1906.]

[89 Pac. 521.]

## R. N. LEATHERWOOD et al., Petitioners, v. WESLEY A. HILL, Auditor of the Territory of Arizona, Respondent.

1. MANDAMUS—PLEADINGS—DEMURRER TO ORIGINAL PETITION—AMENDED PETITION—ORIGINAL DEMURRER APPLICABLE TO.—REV. STATS. ARIZ. 1901, PAR. 1367, CONSTRUED.—Under section 1367, *supra,* the demurrer to original application still stands to the amended application, no other answer or return having been made by respondent.

2. CORPORATIONS—ULTRA VIRES—LAWS 1905, P. 144, No. 69, AND ACTS NINETEENTH LEGISLATIVE ASSEMBLY ACT No. 53, SECS. 1-4, CITED.— Act No. 69, *supra,* made an appropriation of a sum of money to be used by the directors of the Arizona Pioneers Historical Society for the purpose of carrying on its work and duties as set forth in sections 1-4, act No. 53, *supra,* which duties as set forth were to collect books and materials illustrative of the history of Arizona. The articles of incorporation provided that its purposes were to collect and preserve information connected with the early settlement and history of the territory, to form a library and cabinet and preserve such literary and scientific objects as the board of directors may from time to time determine, etc. *Held,* that the general purpose of the corporation as set forth in these articles is such that it will not be *ultra vires* for it to accept and fulfill the trust sought to be imposed upon it by the Appropriation Act.

3. STATUTES—REPEAL—RE-ENACTMENT—LAWS 1905, No. 69, AND LAWS NINETEENTH LEGISLATIVE ASSEMBLY ACT No. 53, SECS. 1-4, CONSTRUED.—Act No. 53, *supra,* being an act incorporating the Arizona Pioneers Historical Society and defining its duties, was repealed in 1901. Act No. 69, *supra,* made an appropriation to be dispersed by the directors of the Arizona Pioneers Historical Society for the

purpose of carrying on its duties in the manner provided for in sections 1-4 of act No. 53, *supra,* *Held,* that sections 1-4 of act No. 53, *supra,* though the act itself was repealed in 1901, was by reference re-enacted by act No. 69, *supra,* to the extent of defining the terms upon which the appropriation is to be accepted and administered by the society.

4. CONSTITUTIONAL LAW—SOCIAL AND SPECIAL ACTS—REV. STATS. U. S. 1851, HARRISON ACT, JULY 30, 1886, (1 SUPP. REV. STATS. U. S. 1874-1891, P. 503, CHAP. 818,) AND LAWS 1905, No. 69, CONSTRUED. —Under section 1851, *supra,* providing that the legislative power of every territory shall extend to all lawful subjects of legislation not inconsistent with the constitution and the laws of the United States, and Harrison Act, *supra,* providing that the legislatures of territories shall not pass local or special laws granting to any corporation any special or exclusive privilege, immunity, or franchise, and that where a general law can be made applicable no special ones shall be enacted. Act No. 69, *supra,* appropriating a sum of money to be dispersed by the Arizona Pioneers Historical Society and providing that the directors must report a detailed statement of expenditures to the governor and hold all collections and property without power to alienate any portion thereof, and that all the money must be expended to procure historical data and collect Arizonana, was not invalid under either the Harrison Act or section 1851, *supra.*

AMENDED APPLICATION by R. N. Leatherwood and others, Directors of the Arizona Pioneers Historical Society, and that Society, against Wesley A. Hill, Territorial Auditor, for a Writ of Mandamus. Writ issued.

See former opinion, *ante,* page 16, 85 Pac. 405.

The material facts are stated in the opinion.

Kingan & Wright, for Petitioners.

E. S. Clark, Attorney-General, for Respondent.

NAVE, J.—On a former hearing we sustained respondent's demurrer to the application in this case. *Ante* page 16, 85 Pac. 405. Leave was then obtained and has been availed of to amend the application. The matter is now before us upon the amended application.

We shall not repeat those matters of pleading set forth in our former opinion. In addition to the facts set forth in the original application, the amended application shows that

the petitioning society was incorporated as the Society of Arizona Pioneers in 1884, under the general incorporation laws then in force; that the purpose of the society as set forth in its articles is: "To cultivate social intercourse, form a perfect union among its members, and create a fund for charitable purposes in their behalf, to collect and preserve information connected with the early settlement and subsequent history of the territory, to form a library and cabinet and preserve such literary and scientific objects as the board of directors may from time to time determine, and in all appropriate matters to advance the interests and perpetuate the memory of those whose sagacity, energy, and enterprise induced them to settle in the wilderness and become the founders of a new state." It is further averred that in compliance with act No. 53, p. 93, Laws of 1897 (set forth in our former opinion), the said society adopted a constitution, which is set forth, and is a readoption of the provisions above quoted from the articles of incorporation, and a formal adoption, in *hæc verba,* of that portion of section 2 of act No. 53, *supra,* imposing duties upon the society. The demurrer to the original application, under our practice, still stands to the amended application, no other answer or return having been made by respondent. (Rev. Stats. 1901, par. 1367.)

We have to determine whether the appropriation of fifteen hundred dollars made in act No. 69, p. 144, of the Laws of 1905, "to be disbursed by the board of directors of the Arizona Pioneers Historical Society to enable it to carry on its work and duties for the years 1905 and 1906 in the manner provided for and set forth in sections 1, 2, 3, and 4 of act No. 53 of the nineteenth legislative assembly incorporating said society and making it the trustee for the territory" is valid legislation. It is apparent to us that the general purpose of the corporation, as set forth in its articles, is such that it will not be *ultra vires* for it to accept and fulfill the trust sought to be imposed upon it by the Appropriation Act. Thus the defect in the original petition, pointed out in our former opinion, has been remedied. Nor have we difficulty in perceiving that sections 1, 2, 3, and 4, of act No. 53, *supra,* though the act itself was repealed in 1901, are, by reference, re-enacted by act No. 69, *supra,* to the extent of defining the terms upon which the appropriation is to be accepted and

administered by the society, and we so hold. We cannot concur with the contention of petitioners, that the name of the society as originally incorporated has been changed by the act of the legislature. The attempted change of the name is special legislation, and void under the provisions of the Harrison Act. But the identity of the recipient of the appropriation is unmistakably clear, and the misnomer of the petitioning society in the pleadings is not complained of by respondent.

Is the appropriation in this case for such a public purpose as to render it a "rightful subject of legislation" under the provisions of section 1851 of the Revised Statutes of the United States? ·By reason of the fact that the recipient of the appropriation is a private corporation is the appropriation within the inhibition of the Harrison Act, prohibiting territorial legislatures from passing "special laws . . . granting to any corporation, association, or individual any special or exclusive privilege, immunity, or franchise whatever?" These are the questions submitted by the attorney-general in behalf of the respondent. The material portion of section 1851 of the Revised Statutes of the United States reads: "The legislative power of every territory shall extend to all rightful subjects of legislation not inconsistent with the constitution and laws of the United States." In *Bennett* v. *Nichols,* 9 Ariz. 138, 80 Pac. 392, we showed that this power is as broad as that exercised by the legislatures of the states, the constitutions and laws of the United States serving as the sole limitation thereon, a limitation comparable to that imposed by state constitutions upon state legislatures. Those are "rightful subjects of legislation" which, subject to that limitation, would be rightful subjects for state legislation. It would be an unmeritorious task to illustrate elaborately the various enterprises which have been deemed such rightful subjects—the erection of monuments to distinguished men, the maintenance of agricultural, horticultural, and live-stock fairs and exhibitions, the direct offer by the legislature of rewards for the apprehension of notorious outlaws, pensions to meritorious public servants or their families, and others innumerable— and to marshal the decisions by which such legislation has been upheld in various states. The few illustrations just given have been the subject of unchallenged legislation in this territory, as well as from earliest times in various states. In dis-

cussing a similar question the supreme court of the United States, quoted by us in *Bennett* v. *Nichols, supra,* said: "What were 'rightful subjects of legislation' when these acts organizing the territories were passed is to be settled . . . by an examination of the subjects upon which legislatures have been in the practice of acting with the consent and approval of the people they represented. A long acquiescence in repeated acts of legislation on particular matters is evidence that those matters have been generally considered by the people as properly within legislative control." *Maynard* v. *Hill,* 125 U. S. 190, 8 Sup. Ct. 723, 31 L. Ed. 654.

The questions propounded are not really two questions, but are two aspects of the same question. The same principles must be applied in this particular case, whether the determination of the matter be referred to section 1851 of the Revised Statutes of the United States, or to the limitations imposed by the Harrison Act (1 Supp. Rev. Stats. U. S. 1874-1891, p. 503, c. 818). An analogous case was presented to the supreme court of California in *Daggett* v. *Colgan,* 92 Cal. 53, 27 Am. St. Rep. 95, 14 L. R. A. 474, 28 Pac. 51, wherein the California World's Fair commissioners procured a mandate compelling the state controller to honor an appropriation for the representation of California at the World's Fair Columbian Exposition. This exposition was conducted under the agency of a private corporation incorporated under the laws of Illinois. It was contended by respondent in that case that the appropriation was in conflict with that article of the state constitution providing that "no money shall ever be appropriated . . . for the use or benefit of any corporation, association, asylum, hospital, or any other institution not under the exclusive management and control of the state as a state institution, nor shall any grant or donation of property ever be made thereto by the state"; and, furthermore, was not for a "public use, such as the state is authorized to make." The court said: "Even if it could be said with any degree of certainty that the private corporation referred to in the act of Congress will increase its receipts because of the fact that the state is to place its products on exhibition, or that it may derive a benefit from the rent of its grounds to the state, or realize other profits, still, this would not affect the question we are considering, or bring the appropriation within

the prohibition of the section of the constitution above quoted, as it is apparent that the main object of the statute is not to confer such incidental benefit, but rather to promote what is assumed to be a matter of public concern, and for the public good. In every public expenditure individuals derive incidental aid and benefit, in the sense that they are paid for services rendered or articles furnished to the state in the prosecution of the public improvement or business of the state, and the expenditure contemplated by this act will not be exceptional in this respect; but there is nothing upon the face of the statute to indicate that the private corporation referred to, or any individual, will or can, if the appropriation is honestly expended, receive $1 as a gratuity or by way of assistance, or except in return for something of value which the officers charged with its disbursement shall deem necessary to secure in order to effect the general purpose and object of the act." *Daggett* v. *Colgan,* 92 Cal. 56, 27 Am. St. Rep. 95, 14 L. R. A. 474, 28 Pac. 51. In considering whether the appropriation was, in any event, for a "public use"—that is, whether it was a rightful subject of legislation—that court quoted from the opinion written by Judge Cooley in *People* v. *Salem,* 20 Mich. 452, 4 Am. Rep. 400: "Wise statesmanship must look beyond the expenditures which are absolutely needful to the continued existence of organized government, and embrace others which may tend to make that government subserve the general well-being of society, and advance the present and prospective happiness and prosperity of the people"; and concluded: "Such expenditures are justified under the general power which the state has to provide for the public welfare." *Daggett* v. *Colgan,* 92 Cal. 57, 59, (27 Am. St. Rep. 95, 14 L. R. A. 474, 28 Pac. 52).

It is to be observed that the conditions of this appropriation are such that the Society of Arizona Pioneers may disburse the fund only as provided by act 53, *ubi supra,* must report a detailed statement of its expenditures to the governor, and shall hold all its collections and property for the territory without power to alienate any portion thereof without authority of law. Every dollar of the appropriation must be expended to procure historical data and collect Arizonana. Neither the society nor any member of it can profit by the appropriation without embezzlement. Neither it nor its offi-

cers are being endowed by the appropriation with "any special or exclusive privilege, immunity, or franchise." A privilege, as defined by the Standard dictionary, is "a peculiar benefit, favor, or advantage, a right . . . not enjoyed by all, . . . a special right or power conferred on or possessed by one or more individuals, in derogation of the general right." An immunity is "freedom from duty or penalty." A franchise is a "special privilege emanating from the government by a legislative grant, and vested in an individual person or in a body politic or corporate." This appropriation act imposes a duty. It does not confer a privilege. It furnishes the means for a compilation of data and collection of Arizonana specifically for the benefit of and open to the public and owned by the territory. It does not grant something in derogation of the general right, or to be enjoyed by the few instead of by all. It does not free the society from any duty or penalty. For practical purposes the society becomes a public agency, an executive instrument of the government, a convenient means for accomplishing an end deemed by the legislature in its wisdom to be useful to the public, an end of a kind which has been generally and frequently promoted by legislative enactments throughout the United States. Applying, therefore, the principle deduced in *Bennett* v. *Nichols, supra,* we are satisfied that the legislature did not trespass beyond the pale of rightful subjects of legislation either generally considered, or with specific reference to the inhibitions of the Harrison Act.

Let the peremptory writ issue.

KENT, C. J., SLOAN, J., DOAN, J., and CAMPBELL, J., concur.