The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

David Alan GUENTHER,
Defendant-Appellee.

No. 86SA282.

Supreme Court of Colorado,
En Banc.

July 13, 1987.

James F. Smith, Dist. Atty., Steven L. Bernard, Chief Trial Deputy, Brighton, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, Frances Smylie Brown, Deputy State Public Defender, Denver, for defendant-appellee.

QUINN, Chief Justice.

The People appeal from a judgment dismissing charges of second degree murder, first degree assault, and the commission of a crime of violence filed against the defendant, David Alan Guenther. The district court dismissed the charges pursuant to section 18–1–704.5(3), 8B C.R.S. (1986), which provides that under certain circumstances an occupant of a dwelling using any degree of physical force against an intruder, including deadly physical force, shall be immune from criminal prosecution. We construe section 18–1–704.5(3) to authorize a district court to dismiss a pending criminal charge prior to trial when the defendant establishes the statutory conditions for immunity by a preponderance of the evidence. In this case, however, the district court erroneously imposed upon the prosecution the burden of proving beyond a reasonable doubt that the defendant's conduct did not satisfy the statutory conditions for immunity. We accordingly reverse the judgment of dismissal and remand the case to the district court for further proceedings.

### I.

### A.

The defendant was charged in a four-count information with the following crimes allegedly committed on April 20, 1986, at or near the defendant's home in Northglenn, Colorado: second degree murder committed against Josslyn Volosin, § 18–3–103(1)(a), 8B C.R.S. (1986); two counts of first degree assault committed against Michael Volosin and Robbie Alan Wardwell, § 18–3–202(1)(a), 8B C.R.S. (1986); and one count of the commission of a crime of violence, § 16–11–309, 8A C.R.S. (1986). After these charges were filed, the defendant filed a motion to dismiss and to enjoin further prosecution. It was the defendant's contention that since he fired the shots only after an unlawful entry had been made into his house and after it appeared that his wife was being harmed, he was immune from prosecution under section 18–1–704.5(3), 8B C.R.S. (1986). The district court first set the case

for a preliminary hearing. At the conclusion of the preliminary hearing, the court found that there was probable cause to believe that the defendant had committed the crimes charged against him. The defendant entered a plea of not guilty, and the court heard the motion to dismiss on July 21, 1986. At the dismissal hearing, the court considered the evidence admitted at the preliminary hearing, supplemented by brief testimony from the defendant's wife offered in support of the motion to dismiss. We summarize the facts from the evidence relied on by the district court.

During the evening of April 19 and the early morning hours of April 20, 1986, a small group of people were drinking and playing pool at the home of Michael and Josslyn Volosin, which was located across the street and two houses to the north of David and Pam Guenther's home. Late in the evening three of the men left the party and went to the Guenthers'. One of the men began banging on the Guenthers' car, shouting obscenities, and challenging David Guenther to come out of the house. The men left after Pam Guenther told them her husband was not at home and she was going to call the police. The police arrived, discussed the incident with Pam Guenther, went to the Volosins' home and talked to Josslyn Volosin, and then left.

The events that followed constituted the basis for the criminal charges against the defendant and for the district court's subsequent dismissal of those charges. The witnesses' versions of these events, however, are in substantial conflict with one another. Michael Volosin stated that shortly after the police left he heard a loud noise at his front door. When he saw no one at his door, he ran to the Guenthers' house and knocked on the front door, whereupon Pam Guenther opened the door, grabbed him, threw him out onto the grass, and had him on the ground when her husband came out of the house shooting. Volosin's version was corroborated by Bonnie Smith, a neighbor who had observed the incident from her window. Smith testified that she had seen Pam Guenther standing over a figure lying next to the Guenthers' porch, shouting obscenities and trying to pick the person up off the ground.

In contrast to the account given by Michael Volosin and Bonnie Smith, Pam Guenther testified that when she went to the front door and opened it, Michael Volosin grabbed her, pulled her out the door, threw her against the wall, and began to beat her up. Pam Guenther stated that as she and Michael began struggling, she screamed for her husband to get the gun. It was her further testimony that Josslyn Volosin had appeared and was trying to break up the fight when the sound of gunshots was heard. After Pam Guenther screamed for help, the defendant came to the front door of his house and, from the doorway, fired four shots from a Smith and Wesson .357 Magnum six-inch revolver. The defendant's account of the events was substantially the same as his wife's.

One shot hit and wounded Michael Volosin, who was lying on the ground next to the Guenthers' porch. Robbie Alan Wardwell, a guest of the Volosins, was wounded by a second shot as he was walking across the Guenthers' front yard to help Josslyn Volosin break up the fight. A third shot killed Josslyn Volosin. There was conflicting evidence as to whether she was hit while standing near the Guenthers' front porch or in the street as she was running away.

The district court found that Michael Volosin had made an unlawful entry into the Guenthers' residence and that the defendant had a reasonable belief that Volosin was committing a crime against Pam Guenther and was using physical force against her. The court concluded as follows: that section 18–1–704.5(3) does not simply provide an affirmative defense to criminal charges, but grants immunity from prosecution for the crimes charged; that this statute does not impermissibly interfere with the prosecutor's executive function in determining whether to file criminal charges in a given case; that the statutory immunity applied to charges based on force directed not only against an actual intruder into the Guenthers' home but also to charges based on force directed against

other persons involved in the incident who did not enter the Guenther home; that it was the prosecution's burden to disprove beyond a reasonable doubt the facts constituting the basis for the application of the statutory immunity; and that the prosecution had failed to meet its burden.[1] The court accordingly dismissed all the charges against the defendant.

### B.

The issues raised on appeal center on section 18–1–704.5, 8B C.R.S. (1986), which became effective on June 6, 1985, and provides as follows:

(1) The general assembly hereby recognizes that the citizens of Colorado have a right to expect absolute safety within their own homes.

(2) Notwithstanding the provisions of section 18–1–704,[2] any occupant of a dwelling is justified in using any degree of physical force, including deadly physical force, against another person when that other person has made an unlawful entry into the dwelling, and when the occupant has a reasonable belief that such other person has committed a crime in the dwelling in addition to the uninvited entry, or is committing or intends to commit a crime against a person or property in addition to the uninvited entry, and when the occupant reasonably believes that such other person might use any physical force, no matter how slight, against any occupant.

(3) Any occupant of a dwelling using physical force, including deadly physical

force, in accordance with the provisions of subsection (2) of this section shall be immune from criminal prosecution for the use of such force.

(4) Any occupant of a dwelling using physical force, including deadly physical force, in accordance with the provisions of subsection (2) of this section shall be immune from any civil liability for injuries or death resulting from the use of such force.

The People raise alternative arguments in urging a reversal of the district court's order of dismissal. The People argue that section 18–1–704.5(3) does not confer jurisdiction on a court to dismiss a criminal case at the pretrial stage of the case but rather creates, at most, an affirmative defense to be raised and resolved at trial by the trier of fact. Alternatively, the People contend that section 18–1–704.5(3), if construed to authorize a court to dismiss criminal prosecution at the pretrial stage of the case, violates the separation of powers doctrine embodied in article III of the Colorado Constitution by impermissibly infringing on the district attorney's executive authority to determine whether criminal charges should be filed against a particular individual. The People also claim that, even if section 18–1–704.5(3) does authorize a court to enter a pretrial judgment of dismissal on grounds of immunity, the district court improperly construed and applied the statutory criteria for immunity to the facts of this case.

By separate order, we have requested the parties to submit briefs on the follow-

---

**1.** The district court orally ruled on the defendant's motion at the close of the hearing on July 21, 1986, and two days later entered a written order, *nunc pro tunc*, which summarized the court's findings and conclusions and ordered that the charges against the defendant be dismissed.

**2.** Section 18–1–704, 8B C.R.S. (1986), dealing with the use of physical force in defense of a person, provides that a person may use "a degree of force which he reasonably believes to be necessary" for the purpose of defending himself or a third person, but that:

(2) Deadly physical force may be used only if a person reasonably believes a lesser degree of force is inadequate and:

(a) The actor has reasonable ground to believe, and does believe, that he or another person is in imminent danger of being killed or of receiving great bodily injury; or

(b) The other person is using or reasonably appears about to use physical force against an occupant of a dwelling or business establishment while committing or attempting to commit burglary as defined in section 18–4–202 to 18–4–204; or

(c) The other person is committing or reasonably appears about to commit kidnapping as defined in section 18–3–301 or 18–3–302, robbery as defined in section 18–4–301 or 18–4–302, sexual assault as set forth in section 18–3–402 or 18–3–403, or assault as defined in sections 18–3–202 and 18–3–203.

ing questions: what is the proper procedure to be followed in determining whether a person is entitled to immunity from criminal prosecution under section 18–1–704.5(3); what is the appropriate allocation of the burden of proof on the immunity issue, and what is the particular standard of proof by which that issue should be resolved; and does a denial of a pretrial motion to dismiss on grounds of immunity prohibit the defendant from raising the immunity issue as an affirmative defense at trial, and, if the defendant is not so prohibited, what are the appropriate procedures and burden of proof applicable to a resolution of the immunity issue at trial. We will separately consider the People's claims and other issues relating to the scope of section 18–1–704.5 and to the procedures and burden of proof in resolving the immunity issue.

## II.

We initially address whether section 18–1–704.5(3) confers jurisdiction on a court to dismiss a criminal action at the pretrial stage of the case or merely creates an affirmative defense to be adjudicated at trial. We conclude that section 18–1–704.5(3) was intended to and indeed does authorize a court to dismiss a criminal prosecution at the pretrial stage of the case when the conditions of the statute have been satisfied.

Our primary task in construing a statute is to ascertain and give effect to the intent of the General Assembly. *E.g., People v. District Court,* 713 P.2d 918, 921 (Colo.1986); *Engelbrecht v. Hartford Accident & Indemnity Co.,* 680 P.2d 231, 233 (Colo.1984). To discern that intent, we look first to the language of the statute itself, giving the statutory terms their commonly accepted and understood meaning. *Binkley v. People,* 716 P.2d 1111, 1113–14 (Colo. 1986); *People v. District Court,* 713 P.2d at 921; *Engelbrecht,* 680 P.2d at 233.

Section 18–1–704.5(3) states that any occupant of a dwelling who uses physical force in accordance with the provisions of subsection (2) of the statute *"shall be immune from criminal prosecution* for the use of such force" (emphasis added).

In our view, this language is susceptible of only one interpretation. The word "shall," when used in a statute, involves a "mandatory connotation" and hence is the antithesis of discretion or choice. *E.g., People v. District Court,* 713 P.2d at 921; *People v. Clark,* 654 P.2d 847, 848 (Colo.1982). "Immunity" means "freedom from duty or penalty." *Black's Law Dictionary* 676 (5th ed. 1979); *see Leatherwood v. Hill,* 10 Ariz. 243, 89 P. 521, 523 (1906); *State v. Cloud,* 248 La. 125, 176 So.2d 620, 622 (1965). The word "prosecution" is defined as "a proceeding instituted and carried on by due process of law, before a competent tribunal, for the purpose of determining the guilt or innocence of a person charged with crime." *Black's Law Dictionary* (1099); *see Bradley v. United States,* 410 U.S. 605, 608–09, 93 S.Ct. 1151, 1154, 35 L.Ed.2d 528 (1973). In accordance with the plain meaning of these terms, the phrase "shall be immune from criminal prosecution" can only be construed to mean that the statute was intended to bar criminal proceedings against a person for the use of force under the circumstances set forth in subsection (2) of section 18–1–704.5.

Although the People would have us read section 18–1–704.5(3) as creating an affirmative defense, and emphasize in support of their argument that the statute was inserted into that part of the Colorado Criminal Code which sets forth affirmative defenses, we do not believe that the People's proposed construction can be reconciled with the plain language of the statute. The legislature has used varying terminology in statutes defining affirmative defenses to criminal charges. For example, in creating affirmative defenses regarding execution of public duty, choice of evils, and use of physical force in special relationships, §§ 18–1–701 to –703, 8B C.R.S. (1986), the legislature has denominated the conduct which is encompassed by the affirmative defenses as "justifiable and not criminal." *See also* §§ 18–1–704, 18–1–705 to –707, 8B C.R.S. (1986) (stating that the use of force is "justified" in certain situations). The legislature has also provided in section 18–1–802, 8B C.R.S. (1986), that a person is

"not responsible for his conduct defined as criminal" if he is insane, and in section 18–1–804, 8B C.R.S. (1986), that a person is "not criminally responsible for his conduct" if he is involuntarily intoxicated so as to lack capacity to conform his conduct to the requirements of the law. Finally, by way of example, section 18–1–708, 8B C.R.S. (1986), provides that a person "may not be convicted of an offense" committed under duress. Nowhere in the statutory affirmative defenses has the legislature used the phrase "shall be immune from criminal prosecution," as it did in section 18–1–704.-5(3).

■ It must be presumed that the legislature has knowledge of the legal import of the words it uses, *see Snyder v. Sullivan,* 705 P.2d 510, 513 (Colo.1985), and that it intends each part of a statute to be given effect, § 2–4–201(1)(b), 1B C.R.S. (1980). We may properly conclude, therefore, that the legislative choice of the immunity language in section 18–1–704.5(3) was a deliberate one calculated to obtain the result dictated by the plain meaning of the words—that is, to create a bar to criminal prosecution and not merely an affirmative defense.

We find further support for our construction of the statute in its legislative history. In explaining the need for the proposed legislation, the co-sponsor of the statute, Senator Brandon, stated at a legislative committee hearing on the bill that under current Colorado law a homeowner might not be convicted in the situation addressed by the bill, but would in any event be required to hire an attorney and perhaps "put his home on the block" in order to avoid a jail sentence. Tape recording of Senate Committee on State Affairs Hearing, April 2, 1985 (remarks of Sen. Brandon). This statement clearly suggests that

the bill was intended to spare a homeowner the financial burden of a trial. After the bill was redrafted in response to concerns expressed by district attorneys, Representative Mielke explained at a Conference Committee meeting that the committee members had eliminated earlier language creating a presumption that a homeowner's use of deadly physical force against an intruder was reasonable [3] and had redrafted the provision to state that the person "shall not be prosecuted—shall be immune from prosecution." Tape recording of Legislative Conference Committee Meeting, May 22, 1985 (remarks of Rep. Mielke). This legislative history thus supports the inference that the General Assembly understood, and obviously intended, that the immunity provision of section 18–1–704.5(3) would protect a home occupant from the burden of defending a criminal prosecution when it was determined that the conditions for statutory immunity were established.

■ To accept the People's proposed construction of section 18–1–704.5(3) would result in engrafting onto the statutory terminology a meaning far different from what the legislature clearly intended. We therefore hold that where, as here, a defendant is charged with crimes arising out of circumstances colorably within the scope of section 18–1–704.5, subsection (3) of this statute confers authority on a court to conduct a pretrial hearing on whether the statutory conditions for immunity from prosecution have been established and, if so established, to dismiss the criminal charges.

### III.

Having concluded that section 18–1–704.-5(3) authorizes a court to enter a pretrial order of dismissal of criminal charges, we turn to the People's alternative claim that

---

**3.** As originally drafted, House Bill 1361, introduced into the Colorado House of Representatives on February 15, 1985, would merely have added to section 18–1–704(2), 8B C.R.S. (1986) (*see* n. 1, *supra*), the following paragraph:

Notwithstanding the provisions of paragraph (a) of this subsection (2), any person using deadly physical force within his residence shall be presumed to have a reasonable ground to believe that he, a member of his

family, or a member of his household is in imminent danger of being killed or of receiving great bodily injury when that force is used against another person who is not a member of the family or household and who unlawfully and forcibly enters the residence and when the person using the force knows or has reason to believe that an unlawful and forcible entry has occurred.

this statutory grant of authority to the court infringes upon a prosecutor's authority to file criminal charges and thus impermissibly encroaches on an executive function in violation of the constitutional separation of powers. Colo. Const. art. III. We find no merit in the People's claim.

While it is true that district attorneys are executive officers of government, *Beacom v. Board of County Commissioners*, 657 P.2d 440, 445 (Colo.1983), and have broad discretion in matters relating to the filing of criminal charges, *e.g., Sandoval v. Farish*, 675 P.2d 300, 302 (Colo.1984); *People v. District Court*, 632 P.2d 1022, 1024 (Colo.1981), section 18–1–704.5(3) does not prohibit a district attorney from initiating a criminal prosecution. What the statute does is to confer authority on a court to determine whether the initiated charges should be dismissed because the statutory conditions for immunity have been established.

■ The General Assembly is vested with constitutional authority not only to define criminal conduct and to establish the legal components of criminal liability but, as well, to delineate statutory defenses and bars to criminal prosecution. *See People v. Low*, 732 P.2d 622, 627 (Colo.1987); *Hendershott v. People*, 653 P.2d 385, 390–91 (Colo.1982), *cert. denied*, 459 U.S. 1225, 103 S.Ct. 1232, 75 L.Ed.2d 466 (1983). The immunity created by section 18–1–704.5 is a conditional immunity in the sense that it applies only if certain factual elements are established. Determining whether, in the context of a pending criminal prosecution, a sufficient factual predicate exists for the application of the statutory bar is no different from other forms of adjudication requiring the application of a statutory standard to the facts as found by the court. A court, for example, performs a similar

function when it conducts a pretrial hearing to determine whether the statute of limitations bars the prosecution of a charge, § 16–5–401, 8A C.R.S. (1986), whether a pending prosecution would violate statutory prohibitions against double jeopardy, §§ 18–1–301 to –304, 8B C.R.S. (1986), or whether the prosecution is barred by reason of an asserted violation of the accused's right to a speedy trial, § 18–1–405, 8B C.R.S. (1986). The adjudicatory role of the court in these situations is no different from the court's adjudicatory role contemplated by section 18–1–704.5(3) in resolving whether a person accused of a crime must be immunized from further prosecution.

■ The People nonetheless argue that the decision to grant or deny immunity under section 18–1–704.5(3) is analogous to the decision to seek use immunity for a witness pursuant to section 13–90–118, 6 C.R.S. (1986 Supp.), when the witness refuses to testify on the basis of his privilege against self-incrimination—a decision which we have recognized as being within the discretion of the prosecutor. *See Harding v. People*, 708 P.2d 1354 (Colo.1985). This argument, however, disregards the obvious differences in the statutory language of section 13–90–118 and that of section 18–1–704.5. Section 13–90–118 provides that in certain circumstances a prosecutor *may* request use immunity for a witness who has refused to testify on the basis of the privilege against self-incrimination, and in response to such request a court *may* order the witness to testify on the express condition that no testimony or other information directly or indirectly derived therefrom may be used against the witness in any criminal case except a prosecution for perjury, for false statement, or for otherwise failing to comply with the order.[4] In con-

4. Section 13–90–118, 6 C.R.S. (1986 Supp.), states:

Witness immunity. (1) Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to a court or grand jury of the state of Colorado involving any laws of the state and the person presiding over the pro-

ceeding communicates to the witness an order as specified in subsection (2) of this section, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; except that no testimony or other information compelled under the order, or any information directly or indirectly derived from such testimony or other information, may be used against the witness in

trast to this discretionary grant of authority to the prosecutor and the court, section 18–1–704.5(3) mandates that the occupant of a home "shall be immune from criminal prosecution" when the conditions of the statute have been satisfied. Therefore, once it is judicially determined that the conditions for immunity from prosecution have been established in accordance with section 18–1–704.5(3), dismissal of the pending criminal charge to which the immunity applies is mandatory. A court making this determination does not infringe upon any executive authority or function.

any criminal case, except a prosecution for perjury or false statement or otherwise failing to comply with the order.

(2) In the case of any individual who has been or may be called to testify or provide other information at any proceeding before or ancillary to a court or grand jury of the state of Colorado, the district court for the judicial district in which the proceeding is or may be held may issue, upon request of any district attorney, attorney general, or special prosecutor of the state of Colorado, an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in subsection (1) of this section.

(3) A district attorney, attorney general, or special prosecutor of the state of Colorado may request an order as specified in subsection (2) of this section when in his judgment the testimony or other information from such individual may be necessary to the public interest and such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination.

5. Crim.P. 12(b) states that any defense or objection which is capable of determination without the trial of the general issue may be raised by motion. We are satisfied that a motion to dismiss predicated on the immunity provisions of section 18–1–704.5 qualifies as a Crim.P. 12(b) motion. Such a motion provides a defendant with the procedural means to assert the very right which the General Assembly obviously contemplated when it enacted section 18–1–704.5—that is, an early opportunity to seek dismissal of a pending prosecution upon establishing the statutory conditions for immunity. Moreover, because a pretrial claim of immunity will be resolved under the preponderance of evidence standard of proof rather than the reasonable doubt standard applicable to a trial on the merits, a motion to dismiss based on section 18–1–704.5(3) is indeed capable of resolution under procedures and standards different from those applicable to a trial on the merits. Final-

## IV.

Having concluded that a criminally accused is entitled to a pretrial determination of his immunity claim under section 18–1–704.5(3), and having further determined that the immunity statute does not violate the constitutional separation of powers, we next consider the scope of the statutory immunity, the allocation of the burden of proof and the standard of proof applicable to a pretrial motion for dismissal on the basis of statutory immunity,[5] and the effect of a court's denial of a pretrial

ly, although arising in an evidentiary context somewhat different from a Crim.P. 12(b) motion based on the statutory immunity created by section 18–1–704.5(3), our prior decisions nonetheless have recognized that a motion to dismiss is an appropriate procedural device to challenge a pending prosecution on the basis of a prior grant of either transactional or derivative use immunity. E.g., *Steinberger v. District Court*, 198 Colo. 59, 596 P.2d 755 (1979); *People v. Casselman*, 196 Colo. 304, 583 P.2d 933 (1978); *Wheeler v. District Court*, 178 Colo. 320, 497 P.2d 695 (1972).

The usual method of raising an immunity claim based on section 18–1–704.5(3), therefore, will be a pretrial motion to dismiss pursuant to Crim.P. 12(b), after there has been a judicial determination of probable cause to believe that the defendant committed the offenses charged or after a preliminary hearing has been waived. We acknowledge that a reasonable argument can be made for authorizing the immunity claim to be resolved prior to a preliminary hearing. Several practical considerations, however, lead us to reject such a procedure. Felony prosecutions are often initiated by complaint in the county court, which has limited jurisdiction to determine probable cause and to bind the case over to the district court for trial, § 13–6–106(1)(b), 6 C.R.S. (1973); Crim.P. 5(a)(4), but has no jurisdiction to dismiss a felony charge for any reason other than a "no probable cause" determination following a preliminary hearing. When the prosecution is commenced in county court, therefore, the resolution of the immunity claim necessarily must await the transfer of the case to the district court. Furthermore, if either a county or district court determines at a preliminary hearing that there is no probable cause, the defendant will be discharged and the charges dismissed, Crim.P. 5(a)(4), and 7(h), with the result that there will be no need to rule on the immunity claim since there is no longer any prosecution pending against the defendant. A finding of probable cause, on the other hand, renders the defendant answerable to the charges. With the case in that posture, the defendant is entitled to file a motion to dismiss pursuant to Crim.P. 12(b), since the statutory

motion for statutory immunity on the trial of the case.

### A.

We first address the scope of the statutory immunity created by section 18–1–704.5. In resolving this issue we look to the plain terms of the statute.

■ Subsection (2) of the statute states that an occupant of a dwelling is justified in using physical force "against *another person* when *that other person* has made an unlawful entry into the dwelling" (emphasis added) and when the additional statutory requirements are met. Subsection (3) provides immunity from criminal prosecution for an occupant using physical force "in accordance with the provisions of subsection (2) of this section." There is nothing in section 18–1–704.5 suggesting that the General Assembly intended to broaden the conditions for statutory immunity to include a home occupant's right to use any degree of physical force against another person solely on the basis of an appearance, rather than the actuality, of an unlawful entry into the dwelling by that other person.[6] The legislature adopted a "reasonable belief" or "appearance" standard in section 18–1–704.5 only with respect to those other statutory criteria for immunity relating to the intruder's conduct inside the dwelling.[7] Under these circumstances, we are satisfied that the failure to include a similar "reasonable belief" or "appear-

ance" standard with respect to the unlawful entry element of immunity was the result of deliberate legislative choice.

■ Since there is no ambiguity in this statutory language, we need not resort to other rules of statutory construction. Rather, we must give effect to the plain language of the statutory text. *E.g., People v. Mascarenas,* 706 P.2d 404, 406 (Colo. 1985); *People v. Macias,* 631 P.2d 584, 587 (Colo.1981). In accordance with the explicit terms of the statute, we hold that section 18–1–704.5 provides the home occupant with immunity from prosecution only for force used against one who has made an unlawful entry into the dwelling, and that this immunity does not extend to force used against non-entrants.

### B.

■ The district court construed section 18–1–704.5 to require that once the accused has established a prima facie case of the conditions for statutory immunity, the prosecution must then disprove those conditions beyond a reasonable doubt. We reject the district court's apportionment of proof on the immunity issue.

We acknowledge that, while the United States Supreme Court has held that federal due process standards are not violated by allocating to a criminally accused the burden of proving an affirmative defense at trial, *see Martin v. Ohio,* —— U.S. ——, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987); *Patter-*

immunity created by section 18–1–704.5(3) is the very type of defense capable of determination prior to trial contemplated by the rule.

We hasten to add that when the district attorney chooses to initiate the criminal prosecution by filing an information in the district court, the parties may elect, and the court may order in the interest of judicial economy, that the preliminary hearing and any immunity claim be consolidated for one evidentiary hearing. In that instance, the court should first rule on the issue of probable cause, and only in the event the court finds probable cause and sets the case for arraignment should the court rule on the immunity claim as a motion to dismiss filed pursuant to Crim.P. 12(b).

**6.** We acknowledge that a defendant has the right to act upon reasonable appearances *in* defending himself or others from third persons, § 18–1–704, 8B C.R.S. (1986); *see, e.g., People v. Jones,* 675 P.2d 9 (Colo.1984); *People v. Tapia,*

183 Colo. 141, 515 P.2d 453 (1973); *Young v. People,* 47 Colo. 352, 107 P. 274 (1910), but this right applies in the context of the affirmative defense of justification when raised at trial. §§ 18–1–407, 18–1–710, 8B C.R.S. (1986); *see People v. Ford,* 193 Colo. 459, 568 P.2d 26 (1977).

**7.** Section 18–1–704.5(2), 8B C.R.S. (1986), expressly refers to the home occupant's "reasonable belief" that the intruder has committed a crime in the dwelling in addition to the uninvited entry, or that the intruder is committing or intends to commit a crime against a person or property in addition to the uninvited entry. This section also refers to the occupant's right to use physical force, including deadly physical force, when the occupant "reasonably believes" that the intruder might use any physical force against any occupant.

*son v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), we have previously held that Colorado's Due Process Clause prohibits allocating such burden to a defendant. *People ex rel. Juhan v. District Court*, 165 Colo. 253, 439 P.2d 741 (1968); *Leonard v. People*, 149 Colo. 360, 369 P.2d 54 (1962). We do not believe, however, that *Juhan* is applicable to a pretrial motion to dismiss pursuant to section 18–1–704.5(3).

There is a constitutionally significant difference in kind between requiring a defendant, on the one hand, to bear the burden of proving a claim of pretrial entitlement to immunity from prosecution and, on the other, to carry the burden of proof at trial on an affirmative defense to criminal charges. Section 18–1–704.5(3) creates a benefit to a defendant far greater than an affirmative defense. If the statute is found to apply to the facts of the case, it will completely prohibit any further prosecution of charges for which, but for the statute, the defendant would otherwise be required to stand trial. Although the wisdom of such legislation is not for us to decide, it cannot be disputed that the immunity created by section 18–1–704.5(3) is an extraordinary protection which, so far as we know, has no analogue in Colorado statutory or decisional law.

Since section 18–1–704.5(3) contemplates that an accused should be permitted to claim an entitlement to immunity at the pretrial stage of a criminal prosecution, we believe it reasonable to require the accused to prove his entitlement to an order of dismissal on the basis of statutory immunity. A hearing to determine the applicability of section 18–1–704.5(3) to pending criminal charges is not a criminal trial, but, rather, is an ancillary proceeding in the nature of a motion to dismiss a pending criminal prosecution on the basis of a statutory bar. We have often imposed on a criminally accused the burden of establishing his entitlement to dismissal of criminal charges at the pretrial stage of the case. *See, e.g., People v. Velasquez*, 641 P.2d 943 (Colo.) (motion to dismiss for lack of a speedy trial), *appeal dismissed* and *cert. denied*, 459 U.S. 805, 103 S.Ct. 28, 74

L.Ed.2d 43 (1982); *People v. Small*, 631 P.2d 148 (Colo.) (motion to dismiss for violation of speedy trial), *cert. denied*, 454 U.S. 1101, 102 S.Ct. 678, 70 L.Ed.2d 644 (1981), and we find it appropriate to impose that same burden on the defendant in connection with a pretrial claim for statutory immunity under section 18–1–704.5(3). Furthermore, the accused presumably has a greater knowledge of the existence or nonexistence of the facts which would call into play the protective shield of the statute and, under these circumstances, should be in a better position than the prosecution to establish the existence of those statutory conditions which entitle him to immunity.

While we conclude that the burden of proof should be placed on the defendant, we decline to require that the defendant prove his entitlement to immunity beyond a reasonable doubt. We believe that the "preponderance of the evidence" is the appropriate standard of proof applicable to a defendant's pretrial motion to dismiss pursuant to section 18–1–704.5(3). We have imposed this burden of proof on defendants in hearings on motions for postconviction relief, *see People v. McClellan*, 183 Colo. 176, 515 P.2d 1127 (1973); *Bresnahan v. People*, 175 Colo. 286, 487 P.2d 551 (1971); *Lamb v. People*, 174 Colo. 441, 484 P.2d 798 (1971), and have likewise placed a similar burden on defendants in regard to certain issues raised at suppression hearings, *People v. Dailey*, 639 P.2d 1068, 1076 (Colo. 1982) (erroneous statement in affidavit for search warrant must be excised if defendant can show by a preponderance of the evidence that error was caused by officer-affiant's perjury or reckless disregard for the truth); *cf. People v. Suttles*, 685 P.2d 183, 189 (Colo.1984) (proponent of a motion to suppress has the burden of establishing that his own constitutional rights were violated by the search and seizure). There is nothing in the legislative history of section 18–1–704.5 to indicate that the General Assembly intended to impose any enhanced measure of proof upon a defendant seeking statutory immunity. On the contrary, the General Assembly expressly intended the

statutory immunity created by section 18–1–704.5(3) as a means to ensure that Colorado citizens be afforded maximum safety in their own homes. § 18–1–704.5(1). The preponderance of evidence standard, in our view, is more consistent with that expressed legislative intent than is the more rigorous reasonable doubt standard of proof.

We thus hold that when section 18–1–704.5(3) is invoked prior to trial as a bar to a criminal prosecution, the burden is on the defendant seeking the benefit of the statutory immunity to establish by a preponderance of evidence that: (1) another person made an unlawful entry into the defendant's dwelling; (2) the defendant had a reasonable belief that such other person had committed a crime in the dwelling in addition to the uninvited entry, or was committing or intended to commit a crime against a person or property in addition to the uninvited entry; (3) the defendant reasonably believed that such other person might use physical force, no matter now slight, against any occupant of the dwelling; and (4) the defendant used force against the person who actually made the unlawful entry into the dwelling.

### C.

 We turn then to the effect of the court's ruling on a pretrial claim of immunity on the trial of the case. If, of course, a court finds that the defendant seeking immunity has met the appropriate burden of proof, then the court must grant immunity from prosecution and dismiss the charges to which the immunity bar applies. If, on the other hand, the court determines that the defendant has not met his burden of proof and denies the motion to dismiss the charges, there is nothing in section 18–1–704.5 to suggest that the defendant should somehow be precluded from raising the same statutory conditions for immunity as an affirmative defense to the charges at trial. Since the legislature clearly intended section 18–1–704.5 to operate as a complete immunity to criminal charges when an occupant of a dwelling used physical force against an intruder under the conditions set forth in the statute, it cannot plausibly

be argued that the legislature thereby intended to deprive an accused of the lesser benefit of an affirmative defense at trial when those same statutory conditions are established under appropriate standards of proof applicable to the trial of a criminal case.

Thus, if the pretrial motion to dismiss on grounds of statutory immunity is denied, the defendant may nonetheless raise at trial, as an affirmative defense to criminal charges arising out of the defendant's use of physical force against an intruder into his home, the statutory conditions set forth in section 18–1–704.5(2). In such an instance, the burden of proof generally applicable to affirmative defenses would apply to the defense created by section 18–1–704.-5(2). The defendant would be required to present some credible evidence supporting the applicability of section 18–1–704.5(2); and, if such evidence is presented, the prosecution would then bear the burden of proving beyond a reasonable doubt the guilt of the defendant as to the issue raised by the affirmative defense as well as all other elements of the offense charged. § 18–1–407, 8B C.R.S. (1986).

### V.

In light of these aforementioned guidelines, we consider the district court's judgment of dismissal in this case. The defendant sought to invoke the protections of section 18–1–704.5(3) by filing a motion to dismiss after criminal charges were filed against him. Section 18–1–704.5(3) contemplates such a motion by a person claiming immunity from criminal prosecution by reason of the existence of those conditions on which a grant of statutory immunity may properly be based. The district court clearly had jurisdiction to hear the defendant's motion prior to trial and to rule on the applicability of section 18–1–704.5(3) to the pending charges.

The district court erred, however, in concluding that the defendant was entitled to a dismissal of the charges because the prosecution had failed to disprove beyond a reasonable doubt the statutory conditions for

immunity outlined in section 18–1–704.5(2). In so ruling, the court incorrectly allocated the burden of proof and applied an erroneous standard of proof. Under the correct standard, the defendant would be entitled to immunity only if he established by a preponderance of the evidence those statutory conditions of immunity set forth in section 18–1–704.5(2).

The district court also erred in concluding that section 18–1–704.5(3) immunizes from criminal prosecution an occupant of a dwelling who uses force against persons who did not actually enter the dwelling. If on remand the district court concludes that the immunity criteria of section 18–1–704.5(2) are established, then the defendant would be entitled to immunity from prosecution for any force used against any person or persons who actually entered his dwelling, but would not be immune from prosecution for any force used against nonentrants.

We reverse the district court's order of dismissal, and we remand the case for further proceedings not inconsistent with the views herein expressed.