The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

T & S LEASING, INC., d/b/a Aspen Care Center West; Victoria Tennant; and Carolyn Westin, Defendants–Appellees.

No. 86SA402.

Supreme Court of Colorado, En Banc.

Nov. 7, 1988.

James F. Smith, Dist. Atty., Guy Till, Special Deputy Dist. Atty., Denver, for plaintiff-appellant.

Larry Pozner & Associates, P.C., Shelley Gilman, Sheila Meer, P.C., Sheila Meer, Denver, for defendants-appellees.

Bragg & Dubofsky, Patrick J. Burke, Boulder, for Victoria Tennant.

Ciancio & Tasker, P.C., Gene A. Ciancio, Denver, for Carolyn Westin.

ROVIRA, Justice.

The question presented by the People's appeal, pursuant to section 16–12–102, 8A C.R.S. (1986), and C.A.R. 4(b), is whether the district court erred in dismissing three counts of a grand jury indictment for lack of probable cause. We affirm.

On November 8, 1985, the grand jury returned a five-count indictment against T & S Leasing, Inc., d/b/a Aspen Care West, Victoria Tennant, director of nursing, and Carolyn Westin, administrator, both of Aspen Care West.[1] The defendants were charged with: (1) third degree assault upon a person 60 years of age or older, (2) endangering the welfare of an incompetent person, (3) reckless endangerment, (4) willful disregard of Colorado Department of

---

1. The corporation was indicted pursuant to section 18–1–606, 8B C.R.S. (1986), which provides:

  (1) A corporation is guilty of an offense if:
  . . . .

    (b) The conduct constituting the offense is engaged in, authorized, solicited, requested, commanded, or knowingly tolerated by the board of directors or by a high managerial agent acting within the scope of his employment or in behalf of the corporation.

(2) As used in this section, "agent" means any director, officer, or employee of a corporation, or any other person who is authorized to act in behalf of the corporation, and "high managerial agent" means an officer of a corporation or any other agent in a position of comparable authority with respect to the formulation of corporate policy or the supervision in a managerial capacity of subordinate employees.

Health regulations, and (5) concealing death.

More than twenty witnesses appeared before the grand jury during a seven-month investigation. The evidence presented discloses that Lucille Grundmeier died on December 17, 1984. At the time of her death, she had resided at Aspen Care West, a nursing home owned and operated by T & S Leasing, Inc., since 1982. Grundmeier had suffered for many years from Huntington's Chorea, a progressive, nonreversible, degenerative, and terminal disease affecting the brain and central nervous system. Victims of Huntington's Chorea develop involuntary movements and impairment of motor function. The involuntary movements progress until the victim is continually and uncontrollably moving and writhing.

On the day of her death, Grundmeier was seen between 7:12 and 7:15 a.m. by a nurse's aide, Barbara Sena. At that time, she was in her usual state of continuous movement. A few minutes later, another nurse's aide, Delia LaCroix, found Grundmeier between the mattress and side rail of her bed. LaCroix immediately summoned help. The charge nurse, Venita Rush, was the first to respond. Because of the position of Grundmeier's body, Rush and LaCroix had to detach the railing from the bed to remove her. Another nurse, Francis DeLeon, then arrived, and she and Rush began performing cardiopulmonary resuscitation (CPR) on Grundmeier who was not breathing and had no pulse.

The Westminster Fire Department was called at approximately 7:45 a.m., and the paramedics arrived at 7:47 a.m. The paramedics were informed that Grundmeier had Huntington's Chorea and had suffered a cardiac arrest, but they were not informed of the position in which Grundmeier was found or the possibility that her condition was due to asphyxiation. The paramedics began advanced life support, and Grundmeier was moved to Saint Anthony's Hospital North. Although Grundmeier's heart was beating at that time, she died approximately 15 hours later. Her death certificate stated that the cause of death was cardiac arrest due to hypoxic encephalopathy, shock, and myocardial infarction.

Because of the failure of the personnel at Aspen Care West to inform the coroner, police, or paramedics of the position in which Grundmeier was found, it was not conclusively determined whether her death was due to cardiac arrest caused by heart disease or cardiac arrest caused by asphyxiation.

The defendants moved to dismiss the indictment pursuant to section 16-5-204(4)(k), 8A C.R.S. (1986),[2] on the basis that it was not supported by probable cause. After reviewing the grand jury transcript, the district court found that counts one, three, and five were not supported by probable cause.

"One of the exceptions to the general rule that a probable cause determination will not be reviewed by an appellate court is the failure of a trial court to follow the rules governing a preliminary hearing." *People v. Luttrell*, 636 P.2d 712, 714 (Colo. 1981) (citing *People ex rel. Leidner v. District Court*, 198 Colo. 204, 597 P.2d 1040 (1979)). The district court's function in reviewing the grand jury record pursuant to section 16-5-204(4)(k) is similar to the role of the court at a preliminary hearing in determining the existence or absence of probable cause. *Luttrell*, 636 P.2d at 714.

In *Luttrell*, we noted that it is incumbent upon the district court to view the evidence in the light most favorable to the prosecution. If there is a conflict in the testimony, the court must draw an inference favorable to the prosecution, and evidence sufficient to support a conviction is not necessary at this stage of the proceedings. Therefore, the duty of the district court here was to evaluate the sufficiency of the evidence

2. Section 16-5-204(4)(k), 8A C.R.S. (1986), provides:

(k) The district court before which the indicted defendant is to be tried shall dismiss any indictment of the grand jury if such district court finds, upon the filing of a motion by the indicted defendant based upon the grand jury record without argument or further evidence, that the grand jury finding of probable cause is not supported by the record.

presented to the grand jury in light of these guidelines. *See Luttrell*, 636 P.2d at 714.

Our task is to determine whether the district court properly applied these principles. To do this, we have examined the evidence presented to the grand jury to determine whether probable cause exists for each of the crimes charged.

■ Count one of the indictment charged the defendants with third degree assault upon a person 60 years of age or older. A person commits third degree assault upon such a person if he "knowingly or recklessly causes bodily injury to another person ..."[3] and "the victim is a person who is sixty years of age or older...."[4]

Count three of the indictment charged the defendants with reckless endangerment.[5] Section 18–3–208, 8B C.R.S. (1986), provides that "[a] person who recklessly engages in conduct which creates a substantial risk of serious bodily injury to another person commits reckless endangerment...."

Viewing the evidence in the light most favorable to the prosecution and, where there are conflicts in the testimony, drawing an inference for the prosecution, we agree with the trial court that the evidence does not support a finding of probable cause for counts one and three.

Count five of the indictment charged the defendants with concealing death. Section 18–8–109, 8B C.R.S. (1986), provides that "[a]ny person who conceals the death of another person and thereby prevents a determination of the cause or circumstances of death commits a class 1 misdemeanor."

The defendants argue that count five was properly dismissed because there was no evidence that they concealed Grundmeier's death. The defendants read section 18–8–109 to require proof of two elements: first, that the defendant conceal death; and second, that the concealment prevent a determination of the circumstances of death.

Our primary task in construing a statute is to ascertain and give effect to the intent of the General Assembly. *E.g., People v. District Court*, 713 P.2d 918, 921 (Colo. 1986). To discern that intent, we look first to the language of the statute, giving the words and phrases their plain and obvious meaning. *E.g., People v. Guenther*, 740 P.2d 971, 975 (Colo.1987); *People v. Appelhanz*, 738 P.2d 1182, 1184 (Colo.1987). When the language of a statute is clear and the intent appears with reasonable certainty, there is no need to resort to other rules of statutory construction, and the statute should be given effect as written. *Id.* at 1184.

Because section 18–8–109 uses the conjunction "and," we hold that a violation of the statute requires proof that a defendant both conceal a death and, by concealing the death, prevent a determination of the cause of that death. *Cf. Kidder v. People*, 115 Colo. 72, 77–80, 169 P.2d 181, 183–85 (1946) (holding that a statute which read "[a]ny person ... who shall assault ... and shall take indecent and improper liberties ..." requires proof of both an assault and the taking of indecent and improper liberties).

Although much of the evidence presented to the grand jury dealt with the concealment of the circumstances of Grundmeier's death, there was no evidence that the defendants concealed the death itself.

The judgment of the district court is affirmed.

---

**3.** Section 18–3–204, 8B C.R.S. (1986).

**4.** Section 18–3–209, 8B C.R.S. (1986).

**5.** The People's notice of appeal and opening brief incorrectly stated that count two of the indictment, endangering the welfare of an incompetent person, § 18–13–103, 8B C.R.S.

(1986), instead of count three, had been dismissed by the trial court. Because we uphold the trial court's dismissal of count three, we need not address the appellees' argument that since the People failed to properly appeal the order dismissing count three, any argument as to that count must be deemed waived.