The PEOPLE of the State of
Colorado, Petitioner,

v.

Mark Kelso JANES, Respondent.

No. 98SC185.

Supreme Court of Colorado,
En Banc.

June 1, 1999.

Rehearing Denied June 21, 1999.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, John Daniel Dailey, Deputy Attorney General, Robert Mark Russel, First Assistant Attorney General, Elizabeth Rohrbough, Assistant Attorney General Criminal Enforcement Section, Denver, Colorado, Attorneys for Petitioner.

Scott H. Robinson, Scott H. Robinson, P.C., Denver, Colorado, Attorney for Respondent.

Chief Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari in *People v. Janes*, 962 P.2d 315 (Colo.App.1998), to determine whether the jury was properly instructed as to certain affirmative defenses raised at trial by the defendant, Mark Kelso Janes (Janes).[1]

Janes appealed the judgment of conviction entered on a jury verdict finding him guilty of manslaughter. Finding that the jury instructions failed to adequately inform the jury of the burden of proof as to the "make-my-day" defense, section 18–1–704.5, 6

C.R.S. (1998), and that the jury should have been given an appropriate instruction on self-defense, section 18–1–704(2)(c), 6 C.R.S. (1998), the court of appeals reversed the judgment of conviction and remanded the case for a new trial. We agree with these conclusions, and affirm the judgment of the court of appeals.

I.

On June 15, 1995, Janes was arrested and charged with heat-of-passion manslaughter for the shooting death of Linford Tillman (Tillman), a former lover and roommate who had moved out of their rented condominium approximately one month before the shooting.

The record indicates that on the day of the shooting Tillman had been drinking and at approximately 2:00 a.m. had used his own key to enter the condominium to attempt a reconciliation with Janes. During their conversation, Tillman discovered that Janes had been in bed with another man. Tillman became agitated, pulled the man from the bed, and assaulted him. Janes asked Tillman to stop, threatened to call the police, and retrieved a gun. Tillman continued the assault and moved towards Janes, who then shot Tillman in the chest.

Janes was arrested and charged with manslaughter. Claiming immunity under section 18–1–704.5, 6 C.R.S. (1998),[2] which justifies under certain circumstances the use of deadly physical force against an intruder (the "make-my-day" statute), Janes filed a pretrial motion to dismiss the charges filed against him. That motion was denied.

At trial, Janes raised the "make-my-day" statute as an affirmative defense. Pursuant to section 18–1–704, 6 C.R.S. (1998), which justifies under certain circumstances the use

---

1. We granted certiorari as to the following issues:

    Whether it is appropriate for a trial court to give a jury instruction based upon language from this court's decision in *People v. McNeese*, 892 P.2d 304 (Colo.1995), to define the requisite "unlawful entry" for the affirmative defense of "make-my-day."

    Whether it is error for a trial court to refuse to give a jury instruction which states that deadly

physical force may be used against a person committing mere assault when the statute in question requires first or second degree assault.

2. The language of the "make-my-day" statute has not changed since it was adopted by the General Assembly in 1985.

of deadly physical force in defense of a person, Janes also raised self-defense as an affirmative defense.

The trial court rejected Janes's tendered instructions on self-defense. Janes objected to the instructions given to the jury as to the affirmative defenses. He was convicted and sentenced to six years of probation.

Contending, among other things, that the trial court erred in instructing the jury, Janes appealed the judgment of conviction entered against him.[3]

The court of appeals acknowledged that the jury instructions accurately stated the elemental requirements of the "make-my-day" statute when it is raised in a pretrial motion for statutory immunity from prosecution. However, the court of appeals reversed the judgment of the trial court and ordered a new trial based upon its conclusion that the tendered jury instructions failed to indicate that the "make-my-day" defense is an affirmative defense and that, as such, the prosecution has the burden to disprove the existence of the defense. *See People v. Janes*, 962 P.2d at 318.

The court of appeals also held that there was sufficient evidence in the record to support Janes's theory of self-defense, that an appropriate instruction on self-defense should have been given to the jury, and that Janes's tendered self-defense instruction, had it been given, would have made Janes's tendered apparent necessity instruction unnecessary. *See People v. Janes*, 962 P.2d at 319. We granted the People's petition for certiorari review.

## II. "Make–My–Day" Defense

The People contend that the court of appeals erred when it concluded that the jury instructions did not properly allocate the burden of proof as to the "make-my-day" defense. We disagree.

■ Section 18–1–704.5 provides, in relevant part, as follows:

**3.** Janes also claimed that the trial court erroneously denied his pretrial motion to dismiss pursuant to the "make-my-day" statute. The court of appeals concluded that sufficient evidence existed in the record to support the trial court's

**Use of deadly physical force against an intruder.**

(1) The general assembly hereby recognizes that the citizens of Colorado have a right to expect absolute safety within their own homes.

(2) Notwithstanding the provisions of section 18–1–704 [the self-defense statute], any occupant of a dwelling is justified in using any degree of physical force, including deadly physical force, against another person when that person has made an unlawful entry into the dwelling, and when the occupant has a reasonable belief that such other person has committed a crime in the dwelling in addition to the uninvited entry, or is committing or intends to commit a crime against a person or property in addition to the uninvited entry, and when the occupant reasonably believes that such other person might use any physical force, no matter how slight, against any occupant.

§ 18–1–704.5(1), (2). Pursuant to this statute, a district court is authorized to dismiss a pending criminal charge prior to trial when the defendant establishes the statutory conditions for immunity by a preponderance of the evidence. *See People v. Guenther*, 740 P.2d 971, 980 (Colo.1987). One such condition requires a defendant to prove by a preponderance of the evidence that the victim knowingly made an unlawful entry. *People v. McNeese*, 892 P.2d 304, 312 (Colo.1995) (interpreting "unlawful entry" in context of defendant's motion for pretrial statutory immunity).

■ If the pretrial motion to dismiss on grounds of statutory immunity is denied, the defendant may raise the "make-my-day" statute at trial as an affirmative defense to criminal charges arising out of the defendant's use of physical force against an intruder into his home. The burden of proof generally applicable to affirmative defenses applies to such a defense. *See People v. Guenther*, 740 P.2d at 981. Under that standard, if a defendant

finding that Janes had not proven all of the requirements for statutory immunity by a preponderance of the evidence. This issue is not before us.

presents some credible evidence supporting the applicability of an affirmative defense, the prosecution then bears the burden of proving beyond a reasonable doubt the guilt of the defendant as to the issue raised by the affirmative defense as well as all other elements of the offense charged. *See* § 18–1–407, 6 C.R.S. (1998).

Here, Janes asserted and the jury was instructed as to the affirmative defenses of self-defense and "make-my-day." Despite the fact that these two affirmative defenses were asserted in this case, the original package of jury instructions approved by the court did not include an instruction explaining the prosecution's burden of proof with respect to an affirmative defense. When the court recognized·this oversight, it gave the jury another instruction, numbered 11A, to address this issue. Instruction No. 11A referred to affirmative defenses and both instruction No. 10 on self-defense and Instruction No. 11 on "make-my-day" were identified as affirmative defenses.[4] However, Instruction No. 11A did not cross-reference Instruction No. 12, which is now before us.

Instruction No. 12 provided as follows:

To find the defendant not guilty based upon the lawful use of deadly physical force against an intruder, you must find that the victim made a knowingly unlawful entry into the defendant's apartment. An entry that is uninvited is not necessarily unlawful. This defense is not available if the victim entered the apartment in the good faith belief he was making a lawful entry.

The People contend that this instruction was properly based on language from *People v. McNeese* and was appropriate to explain to the jury the unlawful entry requirement of the "make-my-day" statute, whether asserted for pretrial immunity or raised as an affirmative defense at trial. Janes argues that Instruction No. 12 eviscerated the "make-my-day" defense in the absence of proof that Tillman did not enter the condominium "in the good faith belief he was making a lawful entry."

■ Although Instruction No. 12 accurately tracks the language of *People v. McNeese* in an attempt to define the term "unlawful entry," the jury instructions must be considered as a whole in determining whether this particular instruction was so misleading as to constitute reversible error. *See People v. DeHerrera*, 697 P.2d 734, 740 (Colo.1985).

Because the "make-my-day" statute creates an immunity defense when raised before trial as well as an affirmative defense when raised at trial, it poses special problems when instructing a jury. Although the elements of the "make-my-day" defense remain the same, the burden of proof is very different.

■ When the "make-my-day" statute is asserted as an affirmative defense at trial, the defendant no longer has the burden to prove all elements of the statute by a preponderance of the evidence. Rather, the burden of proof is, as it always is, on the prosecution to prove beyond a reasonable doubt that the defendant is guilty of the crime charged. *See* § 18–1–407, 6 C.R.S. (1998). Effectively, this requires the People to disprove the affirmative defense beyond a reasonable doubt. However, the language of Instruction No. 12 eliminated that burden by telling the jury that the "make-my-day" statute does not apply unless the defendant proves that the intruder's entry was knowingly unlawful.

Instruction No. 12 was drawn from *McNeese*, which dealt with the "make-my-day" statute in the context of pretrial immunity, and thus did not refer to the burden of proof applicable to this case. Unlike Instruction No. 10 and Instruction No. 11, Instruction No. 12 was not identified as an affirmative defense. Thus, the jury had no reason to know that the prosecution's burden of proof with respect to affirmative defenses, as stated in Instruction No. 11A, applied to Instruction No. 12.

■ Logically, the jury could have concluded that the burden was on the defendant to prove the conditions set forth in Instruction No. 12. As Janes points out, this is especially problematical with respect to the language in Instruction No. 12 that the de-

---

4. The text of jury instructions 10, 11, and 11A are attached as Appendix 1.

fense does not apply if the victim entered the condominium with the good faith belief that he acted lawfully. Clearly it is not the defendant's burden at trial to prove that the victim did not enter in good faith.

Because the instructions given by the court in this case did not put the *McNeese* concepts into context, we conclude that the jury instructions, when read as a whole, confused or misled the jury as to the burden of proof applicable to the affirmative defense of "make-my-day." Thus, we affirm the judgment of the court of appeals as to this issue.

### III. Self Defense

At trial, Janes tendered the following self-defense instruction (No. 2–R), which was rejected by the trial court:

> It is an affirmative defense to the crime of manslaughter that the Defendant used deadly physical force because
>
> 1. he reasonably believed a lesser degree of force was inadequate, and
>
> 2. Linford Tillman was committing or reasonably appeared to be about to commit assault.

Instead, the trial court gave the jury a self-defense instruction[5] which stated that it is an affirmative defense to the crime of manslaughter if Janes had reasonable grounds to believe, and did believe, that he or another person was in imminent danger of being killed or of receiving great bodily injury. The instruction did not inform the jury that it is also an affirmative defense if Tillman had been committing or reasonably appeared about to commit first or second degree assault.

Without acknowledging that Instruction No. 10 was given to the jury, the court of appeals concluded that Janes was entitled to a self-defense instruction and that the trial court should have accepted his tendered instruction.

■ The People contend that the jury was correctly instructed as to self-defense and that Janes's tendered instruction was properly rejected because it erroneously stated that deadly physical force could be used to repel mere assault. Janes argues that the trial court erred by failing to instruct the jury on the right to use deadly physical force to prevent the commission or attempted commission of second degree assault.

Both Janes's tendered self-defense instruction and the self-defense instruction actually given to the jury incorporated language from the self-defense statute, which provides as follows:

> [A] person is justified in using physical force upon another person in order to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force which he reasonably believes to be necessary for that purpose.

§ 18–1–704(1), 6 C.R.S. (1998). The self-defense statute further provides, in relevant part, that:

> Deadly physical force may be used only if a person reasonably believes a lesser degree of force is inadequate and:
>
> (a) The actor has reasonable ground to believe, and does believe, that he or another person is in imminent danger of being killed or of receiving great bodily injury; or
>
> . . . .
>
> (c) The other person is committing or reasonably appears about to commit . . . assault as defined in sections 18–3–202 [first degree assault] and 18–3–203 [second degree assault].

§ 18–1–704(2), 6 C.R.S. (1998).

Because the self-defense statute refers to first or second degree assault, we agree with the People that defendant's tendered self-defense instruction, which suggested that any assault was sufficient, was properly rejected by the trial court. Thus, we disagree with the court of appeals that Janes's tendered self-defense instruction should have been accepted by the trial court.

■ However, we agree with the court of appeals that there was sufficient evidence in the record to support Janes's theory of self-defense, and that an appropriate instruction

---

5. See Instruction No. 10 in the attached appendix.

on self defense, including the justification for deadly physical force when another person is committing or reasonably appears about to commit first or second degree assault, should have been given to the jury.

## IV.

We hold that the jury instructions failed to instruct the jury as to the burden of proof applicable to the "make-my-day" statute when it is raised as an affirmative defense at trial. In addition, we hold that the jury should have been given an appropriate instruction as to self-defense. The judgment of the court of appeals is affirmed. The case is remanded to the court of appeals to be returned to the district court for a new trial.

Justice SCOTT concurs.

### APPENDIX ONE

#### Instruction No. 10

It is an affirmative defense to the crime of Manslaughter that the defendant used deadly physical force because

1. he reasonably believed a lesser degree of force was inadequate, and

2. he had reasonable grounds to believe, and did believe, that he or another person was in imminent danger of being killed or of receiving great bodily injury.

#### Instruction 11

It is an affirmative defense to the crime of Manslaughter that the Defendant used physical force, including deadly physical force, against another person, that

1. while the Defendant was an occupant of a dwelling,

2. the other person made an unlawful entry into that dwelling,

3. the Defendant had a reasonable belief that the other person had committed or is committing or intends to commit a crime in the dwelling in addition to the uninvited entry,

1. The statute was entitled "The Home Protection Bill." The name "make-my-day" is a nickname that emerged during the course of the bill's enactment into law. The statute may not wholly reflect the expressed purposes of the General

4. and the Defendant reasonably believed that the other person might have used any physical force[,] no matter how slight, against an occupant of the dwelling.

#### Instruction 11A

The evidence presented in this case has raised affirmative defenses.

The prosecution has the burden of proving the guilt of the defendant to your satisfaction beyond a reasonable doubt as to the affirmative defenses as well as to all the elements of the crime charged.

After considering the evidence concerning the affirmative defenses with all the other evidence in this case, if you are not convinced beyond a reasonable doubt of the defendant's guilt, you must return a verdict of not guilty.

Justice SCOTT, concurring.

I join in the judgment rendered by the majority. I agree with the majority that "the burden of proof is, as it always is, on the prosecution to prove beyond a reasonable doubt that the defendant is guilty of the crime charged [and, as a consequence] requires the People to disprove the affirmative defense beyond a reasonable doubt." Maj. op. at 303. I also agree "that the jury instructions, when read as a whole, confused or misled the jury as to the burden of proof applicable to the affirmative defense of 'make-my-day.'" Id. at 304.[1]

I write separately, however, to make clear my view that our judgment today regarding the "make-my-day" affirmative defense provided by section 18–1–407, 6B C.R.S. (1998), neither reaches the issues addressed nor reaffirms the judgment rendered in People v. McNeese, 892 P.2d 304 (Colo.1995). I, for one, would welcome the opportunity to revisit the definition of "unlawful entry" and the statutory grant of immunity created under that same statute. However, such an occasion is beyond the scope of our grant of certiorari in this case.

Assembly. See People v. McNeese, 892 P.2d 304, 317 n. 1 (Scott, J. dissenting). Nonetheless, because the majority uses that label in its opinion, I do so as well.

Accordingly, I join in the judgment and opinion of the majority.