The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

David Henry WOOD, Defendant–Appellant.

No. 06CA2581.

Colorado Court of Appeals, Div. VII.

Oct. 15, 2009.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2009.

John W. Suthers, Attorney General, Katherine A. Aidala, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Sandra Saltrese–Miller & Associates, Sandra Saltrese–Miller, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge RUSSEL.

David Henry Wood appeals the trial court's judgment of conviction in a criminal case. We affirm.

## I. Background

The victim and his girlfriend approached Wood and offered to sell him methamphet-

amine. Wood invited the two back to his apartment for the sale. In the apartment, Wood discovered that the drugs were fake. He then shot and killed the victim. A few days later, he was arrested and charged with first degree murder.

Before trial, Wood sought an order of dismissal under the immunity provision of the "make-my-day" statute. *See* § 18–1–704.5(3), C.R.S.2009. The court denied his request. Wood then went to trial and asserted both the make-my-day defense and self-defense. *See* § 18–1–704, C.R.S.2009. The jury rejected those defenses and convicted Wood of manslaughter.

## II. Make–My–Day

Wood contends that the court erred in denying his request for immunity under the make-my-day statute. We decline to review the court's pretrial ruling and conclude that the jury's verdict is supported by sufficient evidence.

### A. Pretrial Ruling

Under the make-my-day statute, an occupant of a dwelling may justifiably kill an intruder if all the following circumstances are present:

1. The intruder made an unlawful entry into the occupant's dwelling;

2. The occupant had a reasonable belief that the intruder had committed a crime in the dwelling (in addition to the uninvited entry), or was committing or intended to commit a crime against person or property (in addition to the uninvited entry); and

3. The occupant reasonably believed that the intruder might use physical force, no matter how slight, against any occupant of the dwelling.

§ 18–1–704.5(2), C.R.S.2009; *see People v. Guenther*, 740 P.2d 971, 981 (Colo.1987).

■ One who kills an intruder under these circumstances "shall be immune from criminal prosecution." § 18–1–704.5(3). To vindicate this statutory right of immunity, a criminal defendant may request a pretrial hearing to show, by a preponderance of the evidence, that the killing occurred under the requisite circumstances. *Guenther*, 740 P.2d at 981. If the defendant makes this showing, he or she is entitled to an order dismissing the charges. *Id.*

■ If the court denies the pretrial motion, the defendant may assert the make-my-day defense at trial. *Id.* The prosecution then must prove beyond a reasonable doubt that the killing did not occur under the circumstances set forth in section 18–1–704.5(2). *Id.*

The make-my-day statute does not authorize an appeal from a pretrial order denying immunity. (In this regard, the statute is different from the Colorado Governmental Immunity Act. *See* §§ 24–10–108, –118(2.5), C.R.S.2009.) And we conclude that, in the absence of legislative authorization, such an order is unreviewable.

The pretrial immunity procedure is akin to preliminary hearings in criminal cases and summary judgment in civil cases. These procedures are all designed to shield parties from the rigors of trial when the evidence shows the presence or absence of certain circumstances. *See Guenther*, 740 P.2d at 976 (legislative history shows that the make-my-day immunity provision was designed to "protect a home occupant from the burden of defending a criminal prosecution"); *Holmes v. Dist. Court*, 668 P.2d 11, 15 (Colo.1983) ("The preliminary hearing is designed to weed out groundless or unsupported charges and to relieve the accused of the degradation and expense of a criminal trial."); *Ginter v. Palmer & Co.*, 196 Colo. 203, 205, 585 P.2d 583, 584 (1978) (purpose of summary judgment is "to pierce the formal allegations of the pleadings and save the time and expense connected with a trial when, as a matter of law, based on undisputed facts, one party could not prevail").

■ Appellate courts do not review orders denying dismissal at preliminary hearing. *See People v. Horrocks*, 190 Colo. 501, 504, 549 P.2d 400, 402 (1976). Nor do they review orders denying summary judgment. *See Feiger, Collison & Killmer v. Jones*, 926 P.2d 1244, 1250 (Colo.1996). These types of orders are not final when pronounced, and they become moot once the issues have been re-

solved by the fact finder. *See Feiger, Collison & Killmer,* 926 P.2d at 1249 ("[O]nce trial begins, summary judgment motions effectively become moot.") (quoting *Daigle v. Liberty Life Ins. Co.,* 70 F.3d 394, 397 (5th Cir.1995)); *People v. Martin,* 670 P.2d 22, 24 (Colo.App.1983) ("[O]nce the defendant has been found guilty beyond a reasonable doubt, the issue of whether there was probable cause to bind him over after a preliminary hearing becomes moot.").

By analogy to those procedures, we conclude that a defendant may not appeal the denial of his motion for dismissal under the make-my-day statute. Absent extraordinary relief under C.A.R. 21, *see, e.g., Young v. District Court,* 740 P.2d 982 (Colo.1987), a defendant's only recourse is to raise the issue as a defense at trial and, if unsuccessful, appeal the jury's verdict. We therefore decline to address Wood's challenge to the court's pretrial order.[1]

### B. Review of Jury's Verdict

After failing to gain immunity, Wood raised a make-my-day defense at trial. The jury rejected his defense. Although Wood does not challenge the jury's resolution of this issue, we have reviewed the record on our own motion to determine whether the verdict is supported by the evidence. We conclude that it is.

We apply the general test for sufficiency of evidence. Under this test, we determine whether the evidence, taken as a whole and in the light most favorable to the prosecution, is sufficient to support a finding beyond a reasonable doubt that Wood did not act under circumstances set forth in section 18–1–704.5(2). *Cf. People v. Sprouse,* 983 P.2d 771, 777 (Colo.1999) (stating general test for sufficiency of evidence).

Assuming, without deciding, that the victim's entry was "unlawful" within the meaning of section 18–1–704.5(2), we nevertheless conclude that the verdict was supported by sufficient evidence. The victim's girlfriend testified that Wood remained calm and composed, even as he shot the victim. This evidence supports an inference that Wood did not reasonably believe that the victim would use any force against him. Accordingly, the jury could rationally conclude that Wood's actions were not justified under the statute. *Cf. Young,* 825 P.2d at 1006 (the defendant testified that she had acted both in self-defense and out of anger; this testimony supported a conclusion that defendant had not feared any physical altercation with the unlawful entrant).

### III. Motion to Suppress

After investigating the murder, the police obtained an arrest warrant for Wood. They soon received an anonymous tip that he was at a homeless shelter. They went to the shelter and detained a man whom they did not know. After frisking the man and obtaining his photo ID, the police learned that they had detained the correct person. They then arrested Wood and took him to the police station. On the way, Wood volunteered some inculpatory statements.

Wood asked the court to suppress those statements. He asserted that the police had stopped and frisked him before acquiring a reasonable suspicion of his identity or his potential dangerousness. The court denied this request.

Assuming that Wood is correct about the lack of reasonable suspicion, we nevertheless conclude that the court reached the right result. If the police detained Wood unreasonably, they risked suppression of any evidence that might have been obtained during the stop and frisk, but they still could have arrested Wood under the warrant. *See*

---

1. Divisions of this court have upheld pretrial orders denying immunity under the make-by-day statute. *See People v. Janes,* 962 P.2d 315, 316–17 (Colo.App.1998), *aff'd,* 982 P.2d 300 (Colo. 1999); *People v. Eckert,* 919 P.2d 962, 964–65 (Colo.App.1996); *People v. Young,* 825 P.2d 1004, 1006 (Colo.App.1991). Because these divisions did not address whether such orders are appealable, their opinions lack precedential value on that issue. *See Romer v. Board of County Comm'rs,* 956 P.2d 566, 570 n. 4 (Colo.1998) (because a prior decision did not address standing, it lacked precedential value on that issue); *see also Hagans v. Lavine,* 415 U.S. 528, 533 n. 5, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) (the Court is not bound by prior decisions that have passed on jurisdictional questions sub silentio).

*United States v. Hudson,* 405 F.3d 425, 431–41 (6th Cir.2005) (evidence obtained during a stop and frisk was suppressed because the police stopped the car to execute an arrest warrant without first having acquired a reasonable suspicion that the defendant was present; however, the arrest itself was still valid). Wood's statements, made on the way to the station, were therefore admissible as the product of a valid arrest. *See New York v. Harris,* 495 U.S. 14, 20, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990) (although the police entered the defendant's home illegally, the defendant's statements, made while in custody under a valid arrest warrant, were admissible).

### IV. Impeachment Evidence

Before trial, Wood asked the court to rule on the admissibility of evidence that concerned the victim's girlfriend. He wanted the jury to hear that the girlfriend had sustained three convictions for prostitution.

The court ruled that the convictions were not admissible as general impeachment evidence. It agreed with the prosecution that the convictions did not qualify for admission under section 13–90–101, C.R.S.2009, because the girlfriend's offenses were not felonies. It also agreed that the convictions could not be raised on cross-examination under CRE 608 because prostitution is not probative of a person's character for truthfulness.

But the court noted that the convictions might be admissible under other theories to impeach specific testimony, and it invited defense counsel to raise the issue at the appropriate time during trial. Counsel agreed that the issue of admissibility "may come down to what she testifies to."

Wood now contends that the court erred in refusing to admit the evidence. He presents no cogent argument that would require us to revisit the court's rulings under section 13–90–101 and CRE 608. And we see no reason to opine about the admissibility of the evidence under other theories because the court reserved ruling on that question, and defense counsel did not raise the issue again. *See People v. Tallwhiteman,* 124 P.3d 827, 833–34 (Colo.App.2005) (appellate court would not address the admissibility of a prior conviction

as impeachment evidence because, although defense counsel was invited to address that issue at trial, he did not raise the issue or request a ruling).

■ We note, moreover, that the proffered evidence would have been cumulative to other evidence admitted at trial. The jury heard through another witness that the victim's girlfriend had been a prostitute and that the victim had offered her services to potential customers. Therefore, any error here would have been harmless. *See People v. Davis,* 218 P.3d 718, 730 (Colo.App.2008) (any error in refusing to admit statement against interest was harmless because the evidence was cumulative).

### V. Mistrial

■ The prosecutor began his cross-examination of Wood by characterizing Wood's direct testimony as a "nice story." The court sustained Wood's objection and admonished the prosecutor in front of the jury. In light of the court's action, which was sufficient to remedy any potential prejudice, we conclude that the court did not abuse its discretion in denying Wood's motion for mistrial. *See People v. Collins,* 730 P.2d 293, 303 (Colo. 1986) (mistrial is warranted only when the prejudice is too substantial to be remedied by other means).

The judgment is affirmed.

Judge J. JONES and Judge CONNELLY concur.