488 P.3d 1055
In Re: The PEOPLE of the State of Colorado, Plaintiff,
v.Juan Johnny HERNANDEZ, Defendant.
Supreme Court Case No. 20SA322 Supreme Court of Colorado.
June 7, 2021
Attorneys for Plaintiff: Brian Mason, District Attorney, Seventeenth Judicial District, Cameron Munier, Senior Deputy District Attorney, Mike Whitney, Senior Deputy District Attorney, Brighton, Colorado
Attorneys for Defendant: Danielle M. McCarthy, P.C., Danielle M. McCarthy, Denver, Colorado, Law Office of Jessica Eve Jones, LLC, Jessica E. Jones, Denver, Colorado, Walta LLC, Mark G. Walta, Denver, Colorado
Attorneys for Respondent Honorable Tomee Crespin: Philip J. Weiser, Attorney General, Emily B. Buckley, Assistant Attorney General, Denver, Colorado
En Banc
JUSTICE BERKENKOTTER delivered the Opinion of the Court.
¶1 In this original proceeding, defendant Juan Johnny Hernandez asks us to conclude that the trial court's order allowing the prosecution's witnesses to testify live via a videoconference platform during his "make my day" immunity hearing ("MMD hearing") violated his confrontation right, his right to a public hearing, and the spirit of Crim. P. 43. Hernandez also asks us to conclude that he was denied equal protection of the law based on his assertion that other judicial officers might have ruled differently. ¶2 We issued a rule to show cause to consider, as a matter of first impression, whether a trial court may properly allow an MMD hearing to proceed with live witness testimony using a videoconference platform instead of in-person courtroom testimony due to specific public health concerns related to the COVID-19 pandemic. We conclude that the trial court was well within its authority to allow the hearing to proceed via a videoconference platform and that such a proceeding does not violate Hernandez's confrontation right. We additionally conclude that Hernandez failed to preserve his public hearing argument. Finally, we conclude that the trial court does not violate Hernandez's right to equal protection by allowing witnesses to appear at the hearing via WebEx,1 even if other judges might permit entirely in-person proceedings. Accordingly, we discharge the rule to show cause.
I. Facts and Procedural History
¶3 Hernandez, following an incident at his apartment in October 2019, was charged with attempted first degree murder, possession of a weapon by a previous offender, two counts of crimes of violence, and one count of possession with intent to manufacture or distribute a controlled substance.
¶4 On March 16, 2020, due to the rapidly spreading novel coronavirus, COVID-19, the Chief Justice, pursuant to the authority granted in Chief Justice Directive 95-01, issued the Order Regarding COVID-19 and Operation of Colorado State Courts, ceasing the normal operation of Colorado state courts and suspending jury calls through April 2020. The order was subsequently expanded and extended to preclude individuals from being summoned for jury service until August 2020. These decisions were predicated on guidance from public health officials and were implemented for the protection of the public's health, safety, and welfare.
¶5 On March 19, 2020, to further address the rapidly changing circumstances due to COVID-19, this court amended and adopted a change to Crim. P. 43. The Amendment, known as the "Public Health Crisis Exception," stated: "If the court finds that a public health crisis exists, it may, in its discretion and with the defendant's oral or written consent, allow the defendant to appear by an interactive audiovisual device for a preliminary hearing ...." Crim. P. 43(f)(2) (effective Mar. 19, 2020) (emphasis added).
¶6 Rule 43 was subsequently amended to extend the use of an interactive audiovisual device, under this paragraph, to include "any proceeding that does not involve a jury," and to require that defense counsel have a means by which to confer confidentially with the defendant and that the proceeding remain "open to the public ... allow[ing] members of the public (including victims) to hear or watch." Crim. P. 43(f)(2) (effective Apr. 7, 2020).
¶7 Throughout this timeframe, chief judges around the state began to issue the first of many local administrative orders addressing the impact of COVID-19 on court operations in light of the unique and specific circumstances in each of their judicial districts.2 ¶8 In July 2020, Hernandez filed a pretrial motion for immunity under section 18-1-704.5, C.R.S. (2020)—otherwise known as the "make my day" law—and requested a hearing on the motion. The prosecution opposed Hernandez's motion, and, due to the ongoing public health threat posed by the COVID-19 pandemic, filed a request to proceed by way of WebEx. In the prosecution's motion to proceed via video testimony, it requested permission to have all parties appear and testify remotely.3 Alternatively, the motion sought to allow the prosecution and its hearing witnesses, three police officers, to appear at the MMD hearing by "interactive audiovisual device." Hernandez objected to conducting the hearing over a videoconference platform and asserted that he had a right to be physically present and accompanied by counsel and that virtual testimony violated his Sixth Amendment confrontation right. He further asserted that, because other criminal cases in the Seventeenth Judicial District were proceeding in person, the trial court would violate his equal protection rights if it allowed the prosecution to appear, and the witnesses to testify, virtually.
¶9 Citing Chief Judge Emily Anderson's Seventh Amended Administrative Order Regarding Court Operations Under COVID-19 Effective August 31, 2020-October 2, 2020, the trial court granted the prosecution's motion to proceed using live videoconference testimony. In its written order, the trial court cited the provision stating:
Judicial officers shall continue to conduct proceedings via remote technology wherever possible. Remote technology continues to be the recommended and preferred means of conducting proceedings. Judicial officers, in their discretion and as judicial resources allow, may continue to conduct proceedings in all docket types, by remote means only, through October 2, 2020. No judicial officer is required by this Order to hold any in-person proceedings.
(Emphases added.)
¶10 The trial court permitted the prosecution to appear, and its witnesses to testify, remotely via videoconference technology "due to the current public health crisis," because the "physical appearances of witnesses creates a physical risk due to the rate of contagion and transfer of C[OVID]-19." Further, the trial court held that the Colorado Rules of Criminal Procedure did not prohibit the use of video testimony by witnesses at evidentiary hearings and that the Colorado Rules of Civil Procedure expressly permit absentee testimony under some circumstances. It found such circumstances were met in connection with the MMD hearing. However, because Hernandez did not consent to appear remotely, the trial court directed that he and his counsel attend the hearing in person, as required under Crim. P. 43.
¶11 Hernandez then filed a petition invoking our original jurisdiction under C.A.R. 21. After reviewing the petition, we issued a rule to show cause.
II. Analysis
¶12 We begin by discussing our jurisdiction to hear this matter pursuant to C.A.R. 21. We then detail the applicable law concerning defendants' confrontation and equal protection rights. Applying the applicable law to the facts of this case, we conclude that the trial court does not violate Hernandez's confrontation right by permitting the prosecution to appear, and its witnesses to testify, via videoconference technology at an MMD hearing. We also conclude that Hernandez failed to preserve his argument that a hybrid videoconference hearing4 would violate his right to a public hearing. Finally, we conclude that the decision to proceed with witnesses appearing virtually via videoconferencing technology does not violate Hernandez's right to equal protection under the law. Accordingly, we discharge the rule to show cause. A. Original Jurisdiction ¶13 It is entirely within our discretion to exercise original jurisdiction pursuant to C.A.R. 21. See C.A.R. 21(a)(1) ("Relief under this rule ... is a matter wholly within the discretion of the supreme court."); Fognani v. Young , 115 P.3d 1268, 1271 (Colo. 2005). Original relief under C.A.R. 21 provides "an extraordinary remedy that is limited in both purpose and availability." People v. Rosas , 2020 CO 22, ¶ 19, 459 P.3d 540, 545 (quoting Villas at Highland Park Homeowners Ass'n v. Villas at Highland Park, LLC, 2017 CO 53, ¶ 22, 394 P.3d 1144, 1151 ). We have generally determined this relief to be appropriate "when an appellate remedy would be inadequate, when a party may otherwise suffer irreparable harm, [or] when a petition raises issues of significant public importance that we have not yet considered." People v. Huckabay, 2020 CO 42, ¶ 9, 463 P.3d 283, 285 (alteration in original) (quoting People v. Kilgore, 2020 CO 6, ¶ 8, 455 P.3d 746, 748 ). ¶14 Hernandez argues that the exercise of original jurisdiction is appropriate in this case because he would be unable to challenge the trial court's ruling on immunity and his constitutional claims through direct appeal. He further contends that because this case presents an issue of first impression arising out of the COVID-19 pandemic, it constitutes an issue of significant public importance. We agree.
¶15 First, this court has previously ruled that "denying immunity from prosecution under section 18-1-704.5 may not be reviewed on appeal after trial." Wood v. People, 255 P.3d 1136, 1138 (Colo. 2011) ; see also id. at 1142 ("[T]he proper avenue for seeking review of such a pretrial order is under C.A.R. 21 ...."). Second, this question is one of significant public importance due to the sweeping, constantly evolving nature of the COVID-19 pandemic and its potential impact on defendants' constitutional rights in trial court proceedings across Colorado.
¶16 Accordingly, we conclude that our exercise of jurisdiction over this case pursuant to C.A.R. 21 is warranted.
B. Witness Testimony Via Videoconferencing Technology at an MMD Hearing Does Not Violate Hernandez's Confrontation Right ¶17 Hernandez first contends that the use of videoconferencing technology at his MMD hearing violates his right to confront the witnesses against him, is impractical, and violates the spirit of Crim. P. 43. He argues that his right to confront the witnesses against him includes the right to have those witnesses appear in person at the MMD hearing. And, he argues, it would be illogical to conclude that a defendant could refuse to consent to the use of an interactive audiovisual device for an MMD hearing, but then allow witnesses to testify at the hearing using that same technology. We disagree.
1. Face-To-Face Confrontation Is Not Required ¶18 We review a possible Confrontation Clause violation de novo. Bernal v. People, 44 P.3d 184, 198 (Colo. 2002). "One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial." Illinois v. Allen, 397 U.S. 337, 338, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). " Crim. P. 43(a) also requires as much, subject to a few exceptions." People v. Janis, 2018 CO 89, ¶ 16 n.2, 429 P.3d 1198, 1201 n.2. ¶19 The Sixth Amendment to the United States Constitution and article II, section 16 of the Colorado Constitution provide criminal defendants with the right to be confronted with the witnesses against them. The elements of the confrontation right—physical presence of the witness, testimony given under oath, cross-examination of the witness, and observation of the witness's demeanor—serve to "ensur[e] that evidence admitted against an accused is reliable." Maryland v. Craig, 497 U.S. 836, 846, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). While physical presence generally includes the right to confront a witness face-to-face at trial, the United States Supreme Court has indicated that this right is not absolute. See id. at 847, 110 S.Ct. 3157 ("[W]e have never insisted on an actual face-to-face encounter at trial in every instance in which testimony is admitted against a defendant.").
¶20 For instance, in Craig , the United States Supreme Court held that child sexual abuse victims could testify through a one-way, closed-circuit television without violating the defendant's confrontation right. Id. at 851-52, 110 S.Ct. 3157. The Court reasoned that, while "the Confrontation Clause reflects a preference for face-to-face confrontation," id. at 849, 110 S.Ct. 3157 (quoting Ohio v. Roberts, 448 U.S. 56, 63, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) ), this preference "must occasionally give way to considerations of public policy and the necessities of the case," id. at 849, 110 S.Ct. 3157 (quoting Mattox v. United States, 156 U.S. 237, 243, 15 S.Ct. 337, 39 L.Ed. 409 (1895) ). And the right may be satisfied without face-to-face confrontation "where denial of such confrontation is necessary to further an important public policy" and where the testimony's reliability is otherwise assured. Id. at 850, 110 S.Ct. 3157.
¶21 Courts have since construed Craig to permit the use of live, two-way videoconference testimony at trial when an important public policy—such as health and safety—will be furthered. See, e.g., United States v. Gigante, 166 F.3d 75, 79-82 (2d Cir. 1999) (permitting a terminally ill witness to testify via two-way, closed-circuit television because it would have been unsafe for him to travel for the testimony); United States v. Donziger, Nos. 19-CR-561, 11-CV-691, 2020 WL 5152162, at *2 (S.D.N.Y. Aug. 31, 2020) ("[T]here is no question that limiting the spread of COVID-19 and protecting at-risk individuals from exposure to the virus are critically important public policies."); Commonwealth v. Masa, No. 1981CR0307, 2020 WL 4743019, at *2 (Mass. Super. Ct. Aug. 10, 2020) ("[A]llowing a prosecution witness to testify during a criminal trial by two-way video conference ... does not violate the defendant's right to confront the witnesses against them where doing so is necessary to protect the health or well-being of the witness ...."). Evaluating whether the underlying goal of the confrontation right would still be achieved through videoconference testimony is crucial to this analysis. See Gigante, 166 F.3d at 80.
¶22 These cases specifically refer to confrontation at trial. This court has not expressly determined whether the confrontation right ever extends to pretrial hearings.5 Although the court of appeals stated in People v. Felder, 129 P.3d 1072, 1073-74 (Colo. App. 2005), that confrontation rights do not extend to pretrial proceedings, we have not drawn such a bright-line rule. ¶23 Turning to the facts before us, we begin by recognizing that the immunity granted under the MMD statute, codified under section 18-1-704.5, is "analogous to a preliminary hearing," Wood, 255 P.3d at 1140, because it is "designed to shield parties from the rigors of trial when the evidence shows the presence or absence of certain circumstances," id. (quoting People v. Wood, 230 P.3d 1223, 1225 (Colo. App. 2009) ). The determination of immunity under this statute is akin to a preliminary hearing because the court first conducts a hearing to determine whether the statutory conditions have been established and, if the conditions have not been established, the issues are then resolved at trial under a higher burden of proof. Id. at 1141 ; see also People v. Guenther, 740 P.2d 971, 980 (Colo. 1987) ("A hearing to determine the applicability of section 18-1-704.5(3) ... is an ancillary proceeding in the nature of a motion to dismiss" under Crim. P. 12(b) ).
¶24 Here, we need not decide if confrontation rights extend to MMD hearings, because we do not perceive that the trial court's order permitting the prosecution to appear, and its witnesses to testify, live over a videoconference platform amounts to a violation of Hernandez's confrontation right under the circumstances in this case. The trial court made detailed findings regarding the COVID-19 public health crisis and adopted the findings set forth in Chief Judge Anderson's Administrative Order that (1) Adams County was listed as having a "very high" COVID-19 incident rate by the Colorado Department of Public Health and Environment, which was the highest in the Denver metropolitan area at the time; (2) 243 of the County's hospital beds were then in use by confirmed or suspected COVID-19 patients; and (3) the mandatory, statewide mask order had been extended.
¶25 The trial court also expressly noted that the denial of face-to-face confrontation, though not optimal, furthered the important public policy of "maintain[ing] the safety of all court users," in light of the "health concerns related to C[OVID]-19." The trial court concluded that requiring witnesses to appear in person presented a risk of contagion.
¶26 The trial court also confirmed that the reliability of the testimony would be assured: It acknowledged that "conducting [an] examination of a witness via audio visual device is not ideal," but noted that WebEx allowed for the sharing of documents and videos, and that the court would still be able to assess the credibility of the witnesses through live, but remote, testimony. As in Craig , the witnesses would be under oath, defense counsel would be able to conduct live cross-examination, and all parties could observe the witnesses' demeanor. See 497 U.S. at 846, 110 S.Ct. 3157.
¶27 Under these specific circumstances, we conclude that the trial court order permitting the prosecution to appear, and the witnesses to testify, at the MMD hearing via WebEx does not amount to a violation of Hernandez's confrontation right.
2. The Spirit of Crim. P. 43 Is Not Violated ¶28 Rule 43 of the Colorado Rules of Criminal Procedure outlines when a defendant's presence at criminal proceedings is required, when it is not, and when his or her presence may be waived. See Crim. P. 43(a)-(d). Specifically, Crim. P. 43(e) governs when a defendant may appear by interactive audiovisual device and details the minimum standards that apply to the use of these devices, such as requiring that defense counsel appear in the same location as the defendant, upon the defendant's request; that a separate, private line of communication between the defendant and counsel exist; that the defendant consents to appear using the audiovisual medium; that the public has access to, and the ability to observe, the hearing; and that the defendant and the court are able to electronically transfer documents to each other.
¶29 With the onset of the COVID-19 pandemic, this court amended Rule 43 to include a "Public Health Crisis Exception." See Crim. P. 43(f) ; People v. Lucy, 2020 CO 68, ¶ 24 n.3, 467 P.3d 332, 337 n.3 ("[W]e amended Rule 43, ‘Presence of the Defendant,’ by adding paragraphs (f)(1) and (f)(2), which authorize trial courts, in the event that ‘a public health crisis’ exists and certain circumstances are present, to hold most proceedings by contemporaneous audio communication and/or interactive audiovisual device."). The amendment permits a defendant to appear by "interactive audiovisual device or by audio device for any proceeding that does not involve a jury" so long as he or she provides oral or written consent. Crim. P. 43(f).
¶30 Hernandez urges us to interpret Rule 43(f) to mean that, because he did not consent to appearing by an interactive audiovisual device, the witnesses against him could not appear by this type of device. But that is not what the Rule says.
¶31 The plain language of Crim. P. 43 is unambiguous. We come to this conclusion by reading the unambiguous language of the rule consistent with its plain and ordinary meaning and then applying it as written. People v. Angel, 2012 CO 34, ¶ 17, 277 P.3d 231, 235 ; People v. Corson, 2016 CO 33, ¶ 44, 379 P.3d 288, 297 ("To ascertain the appropriate construction of a rule of criminal procedure, we employ the same interpretive rules applicable to statutory construction." (quoting Kazadi v. People, 2012 CO 73, ¶ 11, 291 P.3d 16, 20 )).
¶32 Crim. P. 43 only addresses the presence of the defendant and his or her counsel. The rule is silent as to the presence of witnesses. See Crim. P. 43 ; see also People v. Wardell, 2020 COA 47, ¶ 16, 474 P.3d 154, 159 (" Crim. P. 43 ... enumerates stages of the criminal process at which a defendant must be physically present ...." (emphasis added)). Thus, we apply the rule as written and conclude that Crim. P. 43 does not prohibit a court from allowing, over a defendant's objection, a prosecution witness to appear by interactive video device during a public health crisis.
C. Hernandez Waived His Public Trial Claim ¶33 Hernandez next contends that the trial court's order allowing the prosecution to appear, and its witnesses to testify, via WebEx effectively constituted an unconstitutional closure of the courtroom. In Hernandez's view, the hybrid nature of the proceeding excludes the presence of the public in violation of his public trial right. ¶34 Criminal defendants, under both the United States Constitution and the Colorado Constitution, have a right to a public trial. U.S. Const. amends. VI, XIV ; Colo. Const. art. II, § 16. This right "is for the benefit of the accused" so that the public may ensure that he or she "is fairly dealt with and not unjustly condemned." People v. Jones, 2020 CO 45, ¶ 16, 464 P.3d 735, 739 (quoting Waller v. Georgia, 467 U.S. 39, 46, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) ). The United States Supreme Court has extended this right to include pretrial proceedings. Waller, 467 U.S. at 47, 104 S.Ct. 2210 (concluding that the Sixth Amendment public trial right extends to suppression hearings).
¶35 The People argue, and Hernandez concedes, that Hernandez did not raise this argument below. We agree and conclude that Hernandez waived this claim. See Martinez v. People, 2015 CO 16, ¶ 14, 344 P.3d 862, 868 ("A general objection will not suffice. Parties must make objections that are specific enough to draw the trial court's attention to the asserted error." (citation omitted)); see also Stackhouse v. People, 2015 CO 48, ¶ 17, 386 P.3d 440, 446 ("Defendants in Colorado affirmatively waive their right to public trial by not objecting to known closures.").
D. Hernandez Has Not Been Denied Equal Protection ¶36 Finally, Hernandez argues that he was subject to disparate treatment because his case was assigned to, what he asserts was, the only division in the Seventeenth Judicial District conducting virtual, rather than fully in-person, hearings. Hernandez contends that he was denied his confrontation right due to the assignment of his case to this division and that similarly situated defendants were not so deprived. We find Hernandez's argument that he has an equal protection right to have his case assigned—or not assigned—to any particular division without merit. ¶37 Under the Equal Protection Clause, no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. While the Colorado Constitution does not contain a separate equal protection clause, this court has construed article II, section 25 of the Colorado Constitution "to imply a similar guarantee." Dean v. People, 2016 CO 14, ¶ 11, 366 P.3d 593, 596. Equal protection ensures "the like treatment of all persons who are similarly situated." Id. Therefore, the threshold question is whether the class of persons are similarly situated. People v. Young, 859 P.2d 814, 816 (Colo. 1993). ¶38 The level of judicial scrutiny applied when a defendant raises an equal protection challenge depends on the type of classification identified and the nature of the right affected. Dean, ¶ 12, 366 P.3d at 597. Where no suspect class is identified and no fundamental right is at issue, we apply a rational basis standard of review. People v. Diaz, 2015 CO 28, ¶ 25, 347 P.3d 621, 626-27. This standard requires proof "beyond a reasonable doubt that the classification bears no rational relationship to a legitimate legislative purpose or government objective" or that the classification is "unreasonable, arbitrary, or capricious." Id. at ¶ 25, 347 P.3d at 627. To establish a violation, the classification must "arbitrarily single out a group of persons for disparate treatment," without singling out others who are similarly situated. Indus. Claim Appeals Off. v. Romero, 912 P.2d 62, 66 (Colo. 1996). However, "[i]f any conceivable set of facts would lead to the conclusion that a classification serves a legitimate purpose, a court must assume those facts exist." Id. at 67.
¶39 Hernandez does not identify a specific "similarly situated" group that is subject to disparate treatment. See id. at 66 ("[D]issimilar treatment of similarly situated individuals" is a "threshold issue"); see also People v. Black, 915 P.2d 1257, 1260 (Colo. 1996) ("An equal protection challenge must fail if persons alleging disparate treatment are not similarly situated."). We understand Hernandez, based on the context of his argument, to define the class at issue here as individuals facing criminal prosecution in the Seventeenth Judicial District. The disparate treatment would then be the assignment of his case to Judge Crespin's division where hearings were proceeding, in whole or in part, via WebEx.
¶40 Because Hernandez did not identify a suspect class, and because we do not conclude that the trial court violated Hernandez's fundamental rights, we apply the rational basis standard of review. See Diaz, ¶ 25, 347 P.3d at 627. In doing so, we conclude that the trial court's order allowing the prosecution to appear, and its witnesses to testify, in the MMD hearing via videoconference technology, with the safeguards contemplated by Crim. P. 43, was rationally related to concerns regarding the spread of COVID-19 given the specific, ongoing public health crises in the Seventeenth Judicial District at the time the trial court made its detailed findings.
¶41 This alleged disparate treatment arose due to the COVID-19 public health crisis. Chief Judge Anderson's various administrative orders regarding court operations under COVID-19 provided judges in the Seventeenth Judicial District with direction and discretion regarding how to conduct proceedings—virtually or otherwise—in light of the dangers posed by COVID-19. Any judge in the Seventeenth Judicial District could have determined, within his or her discretion, to proceed using videoconferencing technology, so long as his or her determination was otherwise within the bounds of the law. Hernandez's assertion that some judges did not use this technology to conduct proceedings is wholly immaterial because the overarching purpose of allowing virtual proceedings was to "slow the spread of disease" and "reduce the risk of exposure" during a public health emergency. Allowing the use of this technology under these circumstances serves a legitimate government objective. See Diaz , ¶ 25, 347 P.3d at 627.
¶42 Here, the discretionary use of videoconferencing technology for court proceedings during the COVID-19 pandemic is rationally related to the important government objective of maintaining public health and reducing the spread of COVID-19. Moreover, the assignment of criminal cases to different judges, notwithstanding the public health crisis, serves to manage the workload of judges and promote judicial economy. Because of the nature of this system, there will always necessarily be differences in how various judges manage their respective courtrooms and dockets.
¶43 For these reasons, we determine that the trial court did not violate Hernandez's equal protection rights by ordering that the prosecution could appear, and its witnesses could testify, via videoconference technology, even if other judicial officers were conducting in-person hearings. The decision to proceed in this manner was rationally related to the objective of reducing exposure to, and the spread of, COVID-19.
III. Conclusion
¶44 The COVID-19 pandemic has presented innumerable challenges to the important work of trial courts throughout Colorado. Courts from Alamosa to Sterling to Grand Junction and beyond have had to quickly adapt to the ever-evolving nature of this public health crisis in order to find ways to continue the court's business. As it relates to criminal cases, this has required thoughtful and careful consideration of how best to protect the many and varied users of our courts—litigants, attorneys, jurors, defendants, witnesses, victims, court staff, probation officers, and many others—from the spread of COVID-19, while continuing to hear as many cases as possible in a manner that safeguards defendants' constitutional rights.
¶45 Here, the trial court properly considered Hernandez's rights while thoughtfully adjusting procedures based on Crim. P. 43 and the Chief Judge's Administrative Order so as to protect the health and safety of those appearing before it and—in turn—the community at large. We hold that the trial court did not violate Hernandez's confrontation or equal protection rights by allowing the prosecution to appear, and its witnesses to testify, via a videoconferencing platform at his MMD hearing under these specific circumstances. Accordingly, we discharge the rule to show cause.
1 Technology changes quickly, and the language used to describe it changes even more quickly. Here, the trial court authorized the prosecution and the witnesses to appear remotely by WebEx, which is an online videoconferencing platform that allows participants to virtually connect into court proceedings with video and audio via the internet. The parties variously refer to the technology at issue as "WebEx," "interactive audiovisual device," "video conferencing technology," and "remote video." We refer more generically throughout this opinion to this type of technology as "videoconferencing technology" and to testimony at issue here occurring over a "videoconferencing platform." Crim. P. 43 refers to an "interactive audiovisual device." All of the various terms and phrases used here are simply different ways to describe interactive audiovisual devices.
2 See, e.g., Chief Judge Order 2020-04 Finding Public Health Concerns Due to COVID-19 Preclude the Calling of Jurors for Jury Trials Scheduled Between Now and May 31, 2020 (amended Jan. 2021) (explaining that Chief Judge Michael Martinez, Second Judicial District, in April 2020, halted jury trials and juror summons); WebEx Procedures For the Ninth Judicial District (explaining that Chief Judge James Boyd, Ninth Judicial District, ordered that "all dockets and hearings shall be conducted electronically" via WebEx, as of May 14, 2020).
3 The term "remotely" refers to a court proceeding conducted from "a remote location," which generally requires the use of some form of videoconferencing technology. Remotely, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/remotely ; [https://perma.cc/L3PT-X7HC].
4 We use "hybrid" to refer to a hearing in which some participants appear in person in the courtroom and some appear live "remotely" or "virtually" via videoconference technology.
5 We have noted that "the right to confrontation is a trial right," but have not explicitly confined it to such a purpose. See People in Interest of E.G., 2016 CO 19, ¶ 28, 368 P.3d 946, 953 (quoting People v. Spykstra, 234 P.3d 662, 670 (Colo. 2010) ). Other jurisdictions have limited the scope of the confrontation right to trial. See, e.g., State v. Zamzow, 374 Wis.2d 220, 892 N.W.2d 637, 646 (2017) ("[T]he Confrontation Clause does not apply during suppression hearings. ... [It] protects defendants at trial ...."); State v. Daly, 278 Neb. 903, 775 N.W.2d 47, 66 (2009) ("[I]t is well established that Confrontation Clause rights are trial rights that do not extend to pretrial hearings in state proceedings."); State v. Woinarowicz, 720 N.W.2d 635, 641 (N.D. 2006) (concluding that Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), did not intend to apply the confrontation right to pretrial hearings because "[t]he Sixth Amendment right to confrontation is a trial right"); Vanmeter v. State, 165 S.W.3d 68, 73-74 (Tex. App. 2005) (determining that the defendant need not "be afforded the full panoply of trial rights at the motion to suppress hearing"); State v. Timmerman, 218 P.3d 590, 594 (Utah 2009) ("[W]e hold that the federal Confrontation Clause does not apply to preliminary hearings.").